[This opinion has been published in *Ohio Official Reports* at 76 Ohio St.3d 203.]

THE STATE EX REL. OTR ET AL., APPELLANTS, *v.* CITY OF COLUMBUS ET AL., APPELLEES.

[Cite as *State ex rel. OTR v. Columbus*, 1996-Ohio-411.]

*Real property—Owner of property abutting highway has right of access to street it abuts—Any governmental action that substantially and unreasonably interferes with this right constitutes a taking of private property within meaning of Section 19, Article I of Ohio Constitution and Fifth Amendment to United States Constitution.*

————————————

An owner of a parcel of real property has a right to access public streets or highways on which the land abuts. Therefore, any governmental action that substantially or unreasonably interferes with this right constitutes a taking of private property within the meaning of Section 19, Article I of the Ohio Constitution and the Fifth Amendment to the United States Constitution.

————————————

(No. 95-611—Submitted March 19, 1996—Decided July 31, 1996.)

APPEAL from the Court of Appeals for Franklin County, No. 94APE05-761.

————————————

{¶ 1} This appeal involves two properties owned by appellant OTR. OTR is a general partnership that is authorized to hold property in its name and on behalf of appellant State Teachers Retirement System of Ohio. The properties in question are located directly across from each other at 355 and 400 East Campus View Boulevard, Columbus, Ohio. Both properties are zoned for commercial use. The zoning standards for this area were adopted by appellee, city of Columbus, in 1982. Under these standards, improvements to the properties are subject to certain height, setback, "curb cut," and other restrictions.

{¶ 2} The 355 East Campus View Boulevard property (also referred to as Crossgate Center) is a 6.321-acre parcel improved with a two-story, multi-tenant office building and parking area. The property is located on the south side of Campus View Boulevard, abutting the roadway for a distance of approximately five hundred forty feet. Access to Crossgate Center is provided by driveways onto Courtyard and Horizon Drives, located to the west and south of the property, respectively.

{¶ 3} The 400 East Campus View property (also known as Campus View Plaza) is a 12.166-acre parcel improved with a one-story office building, occupied by the Ohio Rehabilitation Service Commission, and parking area. The property is located on the north side of Campus View Boulevard, abutting the roadway for a distance of approximately one thousand feet. Access to Campus View Plaza can be obtained by way of a common access driveway located at the southwest section of the property. This driveway crosses a separately designated tax parcel owned by OTR. The record further indicates that access is also provided via a driveway that is located at the northwest portion of the property.

{¶ 4} Both Crossgate Center and Campus View Plaza are located west of privately owned railroad tracks. When OTR acquired the properties, Campus View Boulevard dead-ended to the west of the tracks at a relatively flat grade. The grade of Campus View Boulevard was established by a 1985 city ordinance.

{¶ 5} In February 1987, the city solicited proposals for engineering services regarding the extension of Campus View Boulevard to the east, which would involve crossing the railroad tracks and connecting Campus View Boulevard with Worthington Woods Boulevard. The purpose of connecting the boulevards was to accommodate an increase in traffic flow in the area. Initially, the city approached the railroads about the possibility of connecting the roads by way of an underpass, as opposed to an overpass grade separation. In a letter to one of the railroad companies, the city stated that an overpass would be a "massive intrusion * * *,

given the existing land use and urban character." However, after further discussions with the railroads, the city decided not to pursue the option of an underpass but, instead, elected to construct an overpass.

{¶ 6} The overpass bridge connecting Campus View Boulevard and Worthington Woods Boulevard was constructed entirely within the city's existing right of way. The overpass design employed by the city incorporates concrete retaining walls to establish an incline at a five-percent grade. At its highest point, the overpass reaches an approximate thirty-foot elevation. The grade separation and concrete retaining walls run virtually the entire length of both the Crossgate Center and Campus View Plaza properties, creating a barrier between the properties and Campus View Boulevard. As a result, OTR is prevented from developing any access routes along the properties' frontage on Campus View Boulevard.

{¶ 7} On February 12, 1993, appellants filed a mandamus action in the Franklin County Court of Common Pleas, seeking an order to compel the city and others[1] to commence appropriation proceeding with respect to both properties. In the mandamus action, appellants alleged that the construction of the railroad overpass interfered with their rights to access the properties via Campus View Boulevard, and that this interference constituted a "taking" of private property within the meaning of the United States Constitution and Article I, Section 19 of the Ohio Constitution.

{¶ 8} The matter proceeded to a bench trial. The trial court heard testimony from several witnesses and numerous exhibits were admitted into evidence. The trial court ruled in favor of appellants and issued a peremptory writ of mandamus, commanding the city to institute appropriation proceedings. In its decision, the trial court concluded that the construction of the "Campus View Grade Separation

---

1. Appellants' mandamus action filed on February 12, 1993 also named as defendants members of the Columbus City Council and the city attorney.

Project" resulted in a "substantial and material impairment" of appellants' rights to access Campus View Boulevard from their properties, and that this impairment constituted a taking of private property. In reaching this conclusion, the trial court stated that "[t]he right of access to and from the Subject Parcels is a property right which grows out of the ownership of land."

{¶ 9} Upon appeal, the Court of Appeals for Franklin County reversed the judgment of the trial court. The court of appeals noted initially that "[a]mong the appurtenances to ownership of land is a right of access to public streets on which the land abuts." However, the court of appeals determined that the construction of the overpass did not substantially interfere with appellants' rights to access Campus View Boulevard from the abutting properties. The court of appeals stated that "[m]erely rendering access less convenient or more circuitous does not by itself constitute 'substantial interference.'" The court of appeals also noted that "the rights of access which OTR claims were 'taken' by the construction of the Campus View overpass have never been developed; the Campus View overpass does not interfere with any of the developed rights of access to OTR's properties. The driveways which provided access to the improvements on the subject properties prior to the construction of the overpass were unaffected by the overpass and remain fully accessible." In this regard, the court of appeals ultimately concluded that "[o]nly where the denial of an undeveloped right of access results in a complete loss of access to the property or improvements on the property will the denial be found to constitute a 'substantial interference.'"

{¶ 10} The cause is now before this court pursuant to the allowance of a discretionary appeal.

———————————

*Benesch, Friedlander, Coplan & Aronoff, Orla E. Collier, James F. DeLeone* and *Roger L Schantz*, for appellants.

4

*Daniel W. Drake*, First Assistant City Attorney, and *John C. Klein III*, Chief Real Estate Attorney, for appellees.

_____

**DOUGLAS, J.**

{¶ 11} Section 19, Article I of the Ohio Constitution provides that "[p]rivate property shall ever be held inviolate, but subservient to the public welfare. * * * [W]here private property shall be taken for public use, a compensation therefor shall first be made in money * * * and such compensation shall be assessed by a jury, without deduction for benefits to any property of the owner." Similarly, the Fifth Amendment to the United States Constitution guarantees that private property shall not "be taken for public use, without just compensation."

{¶ 12} In order to establish a taking, a landowner must demonstrate a substantial or unreasonable interference with a property right. See, *e.g.*, *State ex rel. Taylor v. Whitehead* (1982), 70 Ohio St.2d 37, 39, 24 O.O.3d 88, 89, 434 N.E.2d 732, 734, and *State ex rel. McKay v. Kauer* (1951), 156 Ohio St. 347, 46 O.O. 204, 102 N.E.2d 703. Such an interference may involve the actual physical taking of real property, or it may include the deprivation of an intangible interest in the premises. *Smith v. RR. Co*. (1938), 134 Ohio St. 135, 11 O.O. 571, 16 N.E.2d 310, paragraph one of the syllabus ("Under Section 19, Article I of the [Ohio] Constitution, which requires compensation to be made for private property taken for public use, any taking, whether it be physical or merely deprives the owner of an intangible interest appurtenant to the premises, entitles the owner to compensation."). Moreover, in *Mansfield v. Balliett* (1902), 65 Ohio St. 451, 471, 63 N.E. 86, 92, this court observed: "The value of property consists in the owner's absolute right of dominion, use, and disposition for every lawful purpose. This necessarily excludes the power of others from exercising any dominion, use or disposition over it. Hence, any physical interference by another, with the owner's use and enjoyment of his property, is a taking to that extent. To deprive him of any

valuable use of his land, is to deprive him of his land, *pro tanto*. So that, the principle of the constitution is as applicable where the owner is partially deprived of the uses of his land, as where he is wholly deprived of it. Taking a part is as much forbidden by the constitution as taking the whole."

{¶ 13} One of the elemental rights growing out of the ownership of a parcel of real property is the right to access abutting public roadways. This rule is well stated in *State ex rel. Merritt v. Linzell* (1955), 163 Ohio St. 97, 56 O.O. 166, 126 N.E.2d 53, paragraph one of the syllabus, wherein this court held: "An owner of property abutting on a public highway possesses, as a matter of law, not only the right to the use of the highway in common with other members of the public, but also a *private right or easement* for the purpose of ingress and egress to and from his property, which latter right may not be taken away or destroyed or substantially impaired without compensation therefor." (Emphasis added.)

{¶ 14} In *McKay*, *supra,* 156 Ohio St. 347, 46 O.O. 204, 102 N.E.2d 703, paragraph two of the syllabus, we held:

"Where the grade of a street constituting a part of a state highway has been established and the owner of the property abutting thereon has improved his property in reliance upon and in conformity to such grade, and thereafter a highway improvement is made upon such street by the Director of Highways of the state in accordance with legally approved plans and specifications whereby the width of the street or highway is narrowed and the grade of the remainder is substantially lowered from the former grade to such extent that *there is no physical access to or from the property to the street,* the owner of such property suffers a 'taking' of his property and is entitled to compensation by way of damages from the state to the extent of his loss, even though no part of the physical property is taken or disturbed." (Emphasis added.)

{¶ 15} In *McKay*, the Director of Highways entered into a contract with the city of Youngstown and various railroad companies to reconstruct the Spring

6

Common bridge. The parcel at issue in *McKay* was improved with a store and office building. The property abutted Federal street and extended south along the east side of Spring Common. Spring Common was part of a public highway and served as an approach from Front and Federal streets to the bridge. The reconstruction project involved, among other things, a grade separation and the construction of a retaining wall and railing along the front of the property. As a result of the improvements, the property was not accessible from Spring Common. In determining that a taking had occurred, we stated:

"Since an early day, it has been the law of this state that an owner of real property has an easement in the public street on which his property abuts, as an appurtenance thereto; and that if a substantial change of grade in the street upon which the property abuts renders the buildings thereon less convenient of access there is an appropriation *pro tanto* of the property right in the easement for which compensation may be required." *Id.*, 156 Ohio St. at 351, 46 O.O. at 206, 102 N.E.2d at 705.

{¶ 16} Furthermore, secondary authorities recognize the well-settled legal principle that an owner of a parcel of real estate has the right to access a public street or highway on which the property abuts, and, if the right has been substantially, materially or unreasonably interfered with by a public authority, the landowner is entitled to just compensation. For instance, 39 American Jurisprudence 2d (1968) 552-554, Highways, Streets, and Bridges, Section 178, states:

"The right of access to and from a public highway or street is a natural easement and one of the incidents of the ownership or occupancy of land abutting thereon, and exists whether the fee to the way is in the public or in private ownership. * * * Regardless of whether a large tract is subdivided, the owner or occupant is entitled to a direct outlet on the highway for each reasonably independent economic-use unit thereof. The right of access may serve not only the

personal comings and goings of the owner or occupant, but also his reasonable use of the property for business purposes.

"A properly authorized governmental unit has the power to regulate, reasonably, in the public interest, and without illegal discrimination, the extent of an abutter's private right of access from his property to the highway or street. The cases hold or recognize, however, that such power of regulation does not extend to depriving an abutting owner completely of all access to the street or highway, at least not without compensation therefor. No fee or charge may be imposed or exacted for the exercise of such right of access." (Footnotes omitted.)

{¶ 17} In the case before us, both Crossgate Center and Campus View Plaza were developed after the establishment of the grade of Campus View Boulevard. At the time, the grade of Campus View Boulevard was relatively flat. Moreover, appellants purchased the properties with the existing buildings prior to the city's commencement of the overpass project. As constructed, the overpass bridge inclines at a five percent grade, reaches an approximate thirty-foot elevation, and incorporates massive concrete retaining walls. The grade separation and the concrete retaining walls preclude appellants from ever developing any access routes onto Campus View Boulevard along the entire northern border of the Crossgate Center property and southern border of the Campus View Plaza property. Thus, appellants' existing private right or easement of access to the properties via Campus View Boulevard has been destroyed or at the very least substantially impaired. For these reasons, we find that the trial court properly concluded that the city effectuated a taking of appellants' private property rights, constituting a compensable taking within the meaning of the Ohio and United States Constitutions.

{¶ 18} In reversing the judgment of the trial court, the court of appeals in the case at bar noted that appellants had not established any driveways along the properties' frontage on Campus View Boulevard. In this regard, the court of

appeals indicated that in order to constitute a taking, the overpass structure would have had to interfere with an existing driveway or a "developed" access route. The court of appeals also indicated that a taking did not occur in this case because appellants have not been denied all access to their properties. The court of appeals pointed out that appellants had alternate access to their parcels by way of existing driveways.

{¶ 19} However, we find that the conclusions reached by the court of appeals are not supported by law. We agree with appellants that the court of appeals created, "by judicial fiat," an arbitrary distinction between developed and undeveloped rights of access. Although no access routes existed on Campus View Boulevard along the frontage of either parcel at the time the overpass was constructed, this does not diminish or negate the fact that the city interfered with an existing property right -- the right to access Campus View Boulevard from appellants' abutting properties. Additionally, this court has further established that a taking can occur even where, following the governmental action, the landowner has not been denied all access to the property in question. See *McKay*, *supra,* 156 Ohio St. 347, 46 O.O. 204, 102 N.E.2d 703.[2]

---

2. In *State ex rel McKay v. Kauer* (1951), 156 Ohio St. 347, 46 O.O. 204, 102 N.E.2d 703, this court established that the denial of access to one abutting street can still constitute a taking of private property regardless of the fact that there remained alternate means of access to the property in question. In *McKay*, the property owner had not been denied complete access to the property following the reconstruction project. Although Spring Common was not accessible following the governmental action, there remained alternate means of access to the property.

Moreover, it appears from a close review of *McKay* that at the time of the reconstruction project no "developed" driveways or entrances existed from Spring Common to the property. In fact, in its brief to this court, the Director of Highways stated: "Plaintiff's Exhibits 1 through 10 shows [*sic*] a relationship of plaintiff's building and property before the improvement. It should be noted that before the improvement there were [*sic*] no driveway or entrance from Spring Common to plaintiff's building. The fact is undisputed that the grade of Spring Common in front of plaintiff's building was lowered in compliance with plans and specifications approved by the defendant. The fact is also undisputed that no land of plaintiff's was required for this improvement. After the improvement the fact is clear that plaintiff has no physical access from his property to Spring Common because of the difference of grade between his property and Spring Common." Hence, the court of appeals' distinction between "developed" or "undeveloped" routes of access in the case

**{¶ 20}** We also note that the court of appeals further indicated that a taking had not occurred in this case because "[m]erely rendering access less convenient or more circuitous does not by itself constitute 'substantial interference.'" In support, the court of appeals cited *State ex rel. Noga v. Masheter* (1975), 42 Ohio St.2d 471, 71 O.O.2d 484, 330 N.E.2d 439.

**{¶ 21}** In *Noga*, the property at issue abutted U.S. Route 422 in Trumbull County. The property owners had direct access from their property to the westbound lanes of Route 422, but did not have direct access to the eastbound lanes because a divider separated the lanes of travel. In 1968, the state improved Route 422. As part of the improvement, the state widened the highway, constructed a curb barricade along the edge of the roadway fronting the property, and also constructed a service road providing the property owners with access to Route 422 at a distance of approximately five hundred feet from the property. All of the improvements were constructed within the existing right of way. Claiming that the elimination of direct access to Route 422 amounted to a taking, the property owners sought a writ of mandamus from the trial court to order the state to institute appropriation proceedings. The trial court denied the writ and, on appeal, the court of appeals reversed the judgment of the trial court. We reversed the judgment of the court of appeals, holding that "'mere circuity of travel, necessarily and newly created, to and from real property, does not of itself result in legal impairment of the right of ingress and egress.'" *Id*. at 473, 71 O.O.2d at 485, 330 N.E.2d at 440, quoting *Merritt*, *supra*, 163 Ohio St. 97, 56 O.O. 166, 126 N.E.2d 53, paragraph two of the syllabus.

**{¶ 22}** *Noga*, however, is clearly distinguishable from the situation here. In *Noga*, the improvements did not interfere with the property owners' rights to access the abutting public roadway. After the improvements, the property owners in *Noga*

at bar has, under the circumstances of this case, no bearing on the issue whether a taking has occurred.

had access to their property along the *same* frontage that had abutted Route 422 via the newly constructed service road, which abutted their property in the same manner as Route 422 had. In the present case, the city did not construct any new access routes along the frontage of either property. As a result of the overpass construction, appellants in the case at bar have been completely and forever denied access along the properties' frontage on Campus View Boulevard. Hence, unlike the construction project in *Noga*, the overpass construction here completely eliminated appellants' rights to access the abutting public road (Campus View Boulevard), resulting in continued circuity of travel within appellants' properties, and not circuity of travel *to and from* the abutting properties. See, generally, *Castrataro v. Lyndhurst* (Aug. 27, 1992), Cuyahoga App. No. 60901, unreported (Judge [now Justice] Francis E. Sweeney). Thus, *Noga*, being factually inapposite to this case, clearly does not apply.

{¶ 23} The law in Ohio is clear. An owner of a parcel of real property has a right to access public streets or highways on which the property abuts. Therefore, any governmental action that substantially or unreasonably interferes with this right constitutes a taking of private property within the meaning of Section 19, Article I of the Ohio Constitution and the Fifth Amendment to the United States Constitution. *McKay*, *supra*; and *Merritt*, *supra*, 163 Ohio St. 97, 56 O.O. 166, 126 N.E.2d 53. See, also, *State ex rel. Schiederer v. Preston* (1960), 170 Ohio St. 542, 11 O.O.2d 369, 166 N.E.2d 748, paragraph one of the syllabus (One of the primary purposes for the existence of a street or highway is to provide a means of access to and egress from abutting lands.); *Smith v. Wayne Cty. Bd. of Commrs.* (1893), 50 Ohio St. 628, 633, 35 N.E. 796, 797 ("The owner of a lot abutting on a street has an easement in the street appendant to his lots whereby he is entitled to an unobstructed access to and from the street, and this appendant easement is as much property as the lot itself. This right of property vested in the owner of abutting land is subject, however, to the right of the public to grade and improve the street. But

grades once established are presumptively permanent and cannot, it is obvious, be changed without causing injury and confusion."); and *Crawford v. Delaware* (1857), 7 Ohio St. 459, 471 (Public authorities of cities and towns have control over the use, grade and regrade of streets. "But if, after establishing the grade, they block up or cut down the street before one man's house for the benefit of others, doing a substantial injury, the rights of property have been invaded, and plainest principles of justice require compensation.").

{¶ 24} This is not a case which merely creates circuity of travel to and from appellants' properties. Appellants' rights to access Campus View Boulevard from their parcels have been completely and forever taken away as a result of the construction of the overpass bridge.

{¶ 25} Accordingly, the judgment of the court of appeals is reversed. We reinstate the judgment of the trial court granting the peremptory writ.

*Judgment reversed.*

RESNICK, F.E. SWEENEY, PFEIFER and STRATTON, JJ., concur.

MOYER, C.J., concurs in the syllabus and in the judgment of Justice Cook's dissenting opinion.

COOK, J., dissents.

_____

**COOK, J., dissenting.**

{¶ 26} I respectfully dissent because I believe the majority's holding to be an unwarranted extension of the law of "takings." While noting the requirement that a landowner establish a substantial or unreasonable interference with a property right in order to demonstrate a taking, the majority nonetheless announces a *per se* taking whenever a landowner is denied direct access along the entire frontage of any abutting roadway, regardless of the manner in which the property is improved.

{¶ 27} While an owner of a parcel of real estate possesses the right to access abutting public streets, *Branahan v. Cincinnati Hotel Co.* (1883), 39 Ohio St. 333,

12

335, not every interference with that right constitutes a taking for which compensation is due. In order to establish a taking, a landowner is required to demonstrate "a substantial or material interference with property rights, as well as a substantial or special injury." *State ex rel. Taylor v. Whitehead* (1982), 70 Ohio St.2d 37, 39, 24 O.O.3d 88, 89, 434 N.E.2d 732, 734.

{¶ 28} In *Crawford v. Delaware* (1857), 7 Ohio St. 459, 469-470, this court considered the balance to be struck between a landowner's right to access an abutting roadway and the public's ability to grade and improve a street for the general welfare, stating: "But while we recognize this right of property in a street as incident to an adjacent lot, we must also recognize the right of the public to grade and improve the street; and the question, therefore, is under what circumstances, and to what extent, must the private right yield to the public?" The *Crawford* court answered its question by limiting the class of landowners entitled to compensation for interferences with access to abutting roadways to those who had made improvements and suffered substantial and material injury because of a change in the established grade. *Id.*

{¶ 29} In *State ex rel. McKay v. Kauer* (1951), 156 Ohio St. 347, 46 O.O. 204, 102 N.E.2d 703, at paragraph two of the syllabus, this court further elaborated on the prerequisites to recovery for interference with the property right of access to abutting roadways by requiring that improvements to the abutting property be made "*in reliance upon* and in conformity to [the established] grade." (Emphasis added.)

{¶ 30} Perhaps the clearest enunciation of this principle comes from *Jackson v. Jackson* (1865), 16 Ohio St. 163, 168, wherein this court stated: "The private rights of the owners of lands in the adjacent highways, upon principle, are the same as those of the owner of lots in towns to the adjacent streets. In either case they are, to a great extent, modified by attending circumstances. Such owner has a private right of access to and from the street or highway; *and, when he has made improvements on his land, with direct reference to the adjoining highway as*

*then established*, and with reasonable reference to its prospective improvement and enjoyment by the public, he has a private right of way, or passage, to and from the highway as it then exists; and any substantial change in the highway, to the injury of such passage or way, is an invasion of his private property; and this private right extends so far as the reasonable and convenient enjoyment of such improvements requires the use of the adjacent highway; but beyond such necessary use thereof, the private right is merged in that of the public." (Emphasis added.)

{¶ 31} In today's opinion, the majority appears to retreat from the requirement that a landowner seeking compensation prove substantial or material injury to improvements that are *made in reliance on an established grade*, and instead requires only that the land be improved.

{¶ 32} The majority cites *McKay, supra,* as being illustrative of its conclusion. While it is true that *McKay* involved a roadway alteration that resulted in the complete denial of direct access to and from the property along the property's frontage on Spring Common, that alone did not compel the *McKay* court to find that there was a taking. Instead, the *McKay* court additionally required a finding that the landowner had made improvements to the property in reliance on the existing grade. *McKay,* at paragraph two of the syllabus. In particular, the court noted that a large store and office building, with frontage upon Spring Common, had been erected on the subject premises *with reference to the previously existing grade and access thereto*.[3] *Id.* at 348, 46 O.O. at 204, 102 N.E.2d at 704.

---

3. The majority notes a passage from the *McKay* respondent's brief in an attempt to demonstrate that, in that case, there were no "'developed' driveways or entrances" from Spring Common prior to the roadway alteration. However, that fact is of little consequence. "Improvements" made in reliance on an existing grade can be erections on the land, *Crawford, supra*, driveways, entrances, and loading docks, *Norwood v. Forest Converting Co.* (1984), 16 Ohio App.3d 411, 16 OBR 481, 476 N.E.2d 695; *Akron-Selle Co. v. Akron* (1974), 49 Ohio App.2d 128, 3 O.O.3d 186, 359 N.E.2d 704, or any other valuable addition to property. Black's Law Dictionary (6 Ed.Rev.1990) 757. What is important is that such improvements actually be in existence prior to the roadway alteration and that they be made in reliance on the established grade.

14

{¶ 33} OTR, on the other hand, has failed to demonstrate that any of its improvements were made on reliance of the previously existing grade of Campus View Boulevard. Despite construction of the overpass, all OTR access routes to and from Campus View Boulevard remain exactly as they were before the project was started.[4] Moreover, there is every indication that since completion of the overpass project appellants' properties are being used in exactly the same fashion as before commencement of the project.

{¶ 34} There was no evidence before the trial court that either office building was sited on the subject properties in such a manner that loss of potential access from points contiguous to the overpass constituted a substantial interference with its use and enjoyment. At trial, appellants produced two appraisers and an architect who testified that, as a result of construction of the overpass, the appellants' property had decreased in value. The majority of that testimony, however, related to loss of view, increase in traffic flow and other factors unrelated to access. In order to constitute a taking, a "substantial interference" must relate to *access* to an improvement and not diminution in value related to loss of a property

---

It would appear from the facts of *McKay* that improvements—a large store and office building—were erected with reference to the established grade of Spring Common in such a manner as to take advantage of pedestrian traffic and allow pedestrians a means of access.

4. The majority states its agreement with OTR that the court of appeals created, "'by judicial fiat,' an arbitrary distinction between developed and undeveloped rights of access." I disagree with that characterization, as it is my belief that the appellate court's analysis was grounded in the applicable law. A *developed* right of access is necessarily an improvement to land made in reference to the established grade of an abutting street. Accordingly, even in the absence of evidence that erections on the land were made with direct reference to Campus View Boulevard as established, a developed route of access that is taken away or impaired may produce the "substantial interference" necessary to constitute a taking.

In this case there was no evidence that either building owned by OTR was sited or improved in reference to future direct access to Campus View Boulevard. Further, there were no access routes actually in existence that were affected by the change of grade. Therefore, the court properly concluded that there were no improvements to the subject properties existing at the time of the roadway alteration for which the trial court could have found a "substantial interference" with the right to access.

owner's view, a change in the traffic pattern, or the like. *State ex rel. Schiederer v. Preston* (1960), 170 Ohio St. 542, 544-546, 11 O.O.2d 369, 370-371, 166 N.E.2d 748, 750-751; *State ex rel. Merritt v. Linzell* (1955), 163 Ohio St. 97, 56 O.O. 166, 126 N.E.2d 53, paragraph three of the syllabus; *Hurst v. Starr* (1992), 79 Ohio App.3d 757, 763, 607 N.E.2d 1155, 1158-1159.

**{¶ 35}** The only testimony concerning loss of access to improvements existing on appellants' property that was caused by construction of the overpass related to appellants' loss of flexibility in developing direct access routes to Campus View Boulevard at some future time. In particular, appellants produced testimony that if the building on the northern property is converted from single-tenant to multiple-tenant use, additional access routes to Campus View Boulevard would become desirable.

**{¶ 36}** Trial testimony established that the office building on the northern property was constructed as a single-tenant building, which required only the previously existing access route for that use. There was no evidence that the office building had ever been used for multiple tenancy or that anything particular to its design or siting compelled such use. Instead, appellants merely argue that construction of the overpass along the frontage of their properties might cause a future inconvenience if they choose to alter the *use* of their property.

**{¶ 37}** "However, the fact that property is rendered less desirable as a result of the governmental activity does not in and of itself constitute a taking so as to entitle the owner thereof to compensation." *McKee v. Akron* (1964), 176 Ohio St. 282, 285, 27 O.O.2d 197, 199, 199 N.E.2d 592, 594, overruled on other grounds in *Haverlack v. Portage Homes, Inc.* (1982), 2 Ohio St.3d 26, 30, 2 OBR 572, 575, 442 N.E.2d 749, 757. In determining whether there has been a taking in the instant case, we need only consider whether the property owner has been deprived of meaningful access to improvements made in reliance on the previously existing

grade and in relation to the use to which the property has been devoted. See *State ex rel. Pitz v. Columbus* (1988), 56 Ohio App.3d 37, 42, 564 N.E.2d 1081, 1086.

**{¶ 38}** In arriving at its conclusion, the majority cites the first paragraph of the syllabus in *State ex rel. Merritt v. Linzell* (1955), 163 Ohio St. 97, 56 O.O. 166, 126 N.E.2d 53, as controlling. When read in isolation, that statement indeed appears to be dispositive of this case. However, in light of the factual scenario before the court in *Merritt* and the court's ultimate disposition of that case, I believe that the rule of law therein set forth is incomplete for application to this case.

**{¶ 39}** In *Merritt*, the landowners sought compensation for a taking where the Director of Highways relocated a portion of U.S. Highway No. 50 ("U.S. 50") so that it no longer abutted the landowners' property. The abandoned portion of U.S. Highway No. 50 ("old 50") continued to be maintained as a county highway and the landowners maintained exactly the same access thereto as when the abutting roadway was designated as part of the U.S. highway. Access lanes were built connecting the abandoned portion of the highway with the new stretch of U.S. 50.

**{¶ 40}** The landowners sought compensation for a taking, claiming that their easement of access was destroyed by the relocation of U.S. Highway 50, that the old highway upon which their property continued to abut was no longer a publicly traveled highway, and that, as a result, they had suffered a legal wrong for which compensation was due. The issue of whether the landowners had improved their property in reliance of the established grade was not at issue, as the grade of old 50 had not been altered. Nevertheless, the *Merritt* court was careful to point out that the landowners had improved their land by erecting a gas and oil filling station, a store, and a restaurant at the grade of and abutting on old 50.

**{¶ 41}** The *Merritt* court concluded that there was no taking because (1) a landowner suffers no legal impairment of the right to access where the means of ingress and egress remain unaffected by relocation of a highway, *id.* at paragraph two of the syllabus, and (2) an abutting landowner has no property right in the

continuation or maintenance of the flow of traffic past his property. *Id.* at paragraph three of the syllabus. Because *Merritt* did not involve a change of grade, and there was no dispute that the landowners had improved their property in direct relation to old 50, an analysis of the landowners' reliance on the established grade of old 50 in making improvements to the property was unnecessary.[5] Accordingly, upon close review, *Merritt* becomes less compelling as controlling authority.

{¶ 42} It is clear that this court in *Merritt* did not abandon the requirement that an abutting property owner seeking compensation for a taking demonstrate a "substantial interference" with the right to access improvements that are made in reliance to an established grade of a roadway, as that requirement has been restated in subsequent cases. See, *e.g., State ex rel. Schiederer v. Preston* (1960), 170 Ohio St. 542, 545, 11 O.O.2d 369, 371, 166 N.E.2d 748, 751. OTR has failed to establish that either of its properties was improved *in reliance* on future access being available at the previously existing grade of Campus View Boulevard or that the change of grade renders the means of access that it once enjoyed any less convenient. *See Lotze v. Cincinnati* (1899), 61 Ohio St. 272. Accordingly I would affirm the judgment of the court of appeals.

_____

---

5. In fact, the *Merritt* court expressly distinguished the line of cases which includes *Crawford* and *McKay* as inapposite, stating: "[T]he facts in the instant case do not show the impairment of the use of the highway on which relators' property abuts, but only the opening of a new highway which diverts public travel from the old highway. The cases above noted and cited by relators [including *Crawford* and *McKay*] are not applicable to such a situation." 163 Ohio St. at 102, 56 O.O. at 168, 126 N.E.2d at 55-56.