JOURNAL ENTRY AND OPINION
This is an appeal from an order of Judge Stuart A. Friedman granting summary judgment against appellant Sudhir Waghray, dba Care Cleaners, on his claims against the appellee City of Westlake ("Westlake") arising from, and originating in, an eminent domain proceeding. Waghray contends he was entitled to displacement expenses under R.C. 163.51 et seq., and damages for constitutional violations resulting from Westlake limiting those expenses to its appropriation of the land occupied by his business. We affirm.
Waghray's cleaning establishment was located at 23730 Center Ridge Road on the northwest corner of Clague Road, in Westlake from 1987 until March 16, 1997. He leased the building from Jesse M. Firestone through a written lease and subsequent renewals that were never witnessed, acknowledged or recorded, as R.C. 5301.01 mandated.
On November 12, 1997, Westlake's Director of Law notified Waghray by letter that the city planned to appropriate the property for refurbishing and widening the Clague Road-Center Ridge Road intersection, and he should make other arrangements for his business. The project itself was administered by Westlake with a grant of $1.3 million from the Ohio Public Works Commission to help fund the $2.1 million project budget.
Westlake instituted eminent domain proceedings in Probate Court to appropriate the land and Waghray counterclaimed for relocation costs under R.C. 163.51 et seq. and damages for the value of the remainder of his lease interest; he also asserted claims under 42 U.S.C. § 1983 and third-party claims for injunctive and declaratory relief.[1]
On February 25, 1998, Westlake passed an appropriations ordinance authorizing the payment of $16,000 to Waghray for moving expenses and tendered an $8,000 check to him on March 4, 1998 as an inducement to vacate the premises and accept $7,500 in settlement for the value of his "alleged lease interest." In return, Westlake allowed him to preserve his non-leasehold claims and relocation expense claims if he wished to reassert them in a Common Pleas Court action. He vacated the premises on March 16, 1998, and moved to a strip-mall location at 24569 Center Ridge Road, in Westlake.
Waghray instituted the case sub judice on January 25, 2000 and on November 9, 2000, Westlake moved for summary judgment, to which Waghray responded. Westlake presented a March 5, 1998, letter from Firestone's law firm that advised Waghray that his rent was in arrears and that, if he did not vacate the premises, legal action may be instituted. The judge granted Westlake's summary judgment motion in its entirety under the rationale that Waghray vacated the condemned property on March 16, 1998 in response to a forcible entry and detainer action suit, rather than Westlake's appropriation of the land and, therefore, did not qualify as a "displaced person" for relocation expenses under R.C. 163.51 et seq. He assigns three errors for our review:
 I. THE TRIAL COURT ERRED WHEN IT CONSTRUED THE DEFINITION OF A DISPLACED PERSON TO EXCLUDE PLAINTIFF UNDER OHIO'S RELOCATION ASSISTANCE STATUTE.
The interpretation of a statute is a question of law and is subject tode novo review on appeal.[2] As defined by Ohio's relocation assistance statute, in relevant part, ""[s]tate agency" means any department, agency, or instrumentality of a state or of a political subdivision of a state * * *."[3] R.C. 163.51(B) defines "displacing agency" as: "* * * any state agency or person carrying out a program or project with federal assistance, or carrying out any state highway project that causes a person to be a displaced person." According to R.C. 163.53(A), "[w]henever the acquisition of real property for a program or project undertaken by a displacing agency will result in the displacement of any person, the head of the agency shall make a payment to any displaced person, upon proper application as approved by such agency head, for all * * *" eligible expenses as further set forth in that section (emphasis added). Since it is conceded that no federal assistance was used to improve the intersection, the decisive issue becomes whether a public street improvement project to widen an intersection with a state road within a municipality, administered by the municipality and partially financed with some State funds, can be characterized as a "state highway project," in order to qualify Westlake as a "displacing agency" liable to Waghray. We hold that it cannot.
While Westlake is undisputably a "state agency" as defined by R.C.163.51, the relocation statute does not provide a special definition of either a "state" or a "state highway project." As such, in defining those terms, we are required to apply common meanings to those words unless otherwise statutorily directed by the Revised Code.[4] "The polestar of statutory interpretation is legislative intent to be determined from the words employed by the General Assembly as well as the purpose to be accomplished by the statute."[5] Effect must be given to words utilized; a court cannot ignore words used nor add words not included to reach a desired result.[6]
According to R.C. 1.59(G), "state," as used in the Ohio Revised Code, "* * * when applied to a part of the United States, includes any state, district, commonwealth, territory, insular possession thereof, and any area subject to the legislative authority of the United States of America. `This state' or `the state' means the State of Ohio." "Highway," where described in the Revised Code, means "* * * the entire width between the boundary lines of every way open to the use of the public as a thoroughfare for purposes of vehicular traffic,"[7] and, according to common usage, may be defined as either a main road between cities or any public road.[8]
While Waghray urges that "state highway project," within the meaning of R.C. 163.51 et seq., can be read to refer to any improvement of a road by a governmental entity in Ohio, where the improvement is partially funded by the State but administered locally, or to any improvement to a road on the "state highway system," as established by the Ohio Department of Transportation under the authority of R.C. 5511.01, we are unable to agree. In order for us to sanction such an interpretation, it would be necessary for us to essentially engraft the definition of "state agency," which includes a municipality like Westlake, onto the definition of "state" found in R.C. 1.59(G), which by its terms does not expressly include municipalities, but instead focuses on states as entities or other pre-state territorial designations under Federal law, such as territories or commonwealths (e.g., Puerto Rico). While we agree that remedial statutes like R.C. 163.51 should be liberally construed in order to promote their objects,[9] to adopt Waghray's theory of what constitutes a "state highway project" would be to substantively add to the statutory definition of "state" rather than to interpret it, which we cannot do.
Had the Ohio General Assembly wished to attach displacement-cost liability to a state agency undertaking any highway project, it could have expressed that intention in the statute, but did not. In fact, the General Assembly has mandated that municipalities appropriating land for road construction purposes must compensate the owners of such property in accordance with state eminent-domain law,[10] and has also mandated that a municipality appropriating land for, or incidental to, airport purposes must compensate public utilities or interstate common carriers for facility relocation costs.[11] The failure to affirmatively state that municipalities engaged in road improvement projects must provide for all relocation costs associated with such activity lends support to the proposition that a "state highway project," as used in R.C. 163.51, must refer to highway projects undertaken by the State of Ohio, through the Department of Transportation.
This is particularly evident to us because, in order for the State of Ohio to undertake a road improvement on a state road within a municipality, it must, subject to exceptions not applicable to the casesub judice, secure approval from the municipality to institute such a project. According to R.C. 5511.01,
 "Except as provided * * *, no duty of constructing, reconstructing, maintaining, and repairing such state highways within municipal corporations shall attach to or rest upon the director. The director may enter upon such state highways within any municipal corporation and construct, reconstruct, widen, improve, maintain, and repair them, provided the municipal corporation first consents thereto by resolution of its legislative authority * * *."[12]
Indeed, absent the interjection of the State of Ohio into the arena of municipal road maintenance, such duties are specifically and exclusively assigned to the individual municipal corporations,[13] and are, by common definition, local, not state, undertakings.
We also cannot agree that, because Westlake partially financed the Clague Road improvement project with a grant from the Ohio Public Works Commission ("OPWC"), the State of Ohio was involved to such a degree so as to convert the project into a "state" one. The avowed purpose of the OPWC is to "* * * assist local subdivisions to finance public infrastructure improvements, * * *"[14] including road improvements.[15] Aside from its approval of a project as suitable for a grant, in conformance with state road-construction standards and necessary, however, no action on the part of the State of Ohio is contemplated in terms of planning or executing the project; those duties are assumed by the "local subdivision," defined in R.C 164.01(B) to include a municipal corporation, seeking the grant.
We do recognize that O.A.C. 5501:2-5-01(B)(22), as part of the administrative regulations promulgated under the authority of R.C. 163.51et seq., pursuant to the powers vested in the Ohio Department of Transportation by R.C. 111.15, defines "state" to include state-level governmental units "* * * or a political subdivision of any of these jurisdictions," but we decline to give effect to this definition-by-rule. "Administrative rules generally cannot add to or subtract from legislation. * * * [W]here a rule is clearly in conflict with any statutory provision, it is invalid."[16] An administrative regulation substantively altering statutory definitions of words or phrases and affecting rights under the statute must yield to the statute.[17]
We hold that the administrative definition of "state" supplied by O.A.C. 5501:2-5-01(B)(22) impermissibly expands the scope of liability described by R.C. 163.51(B) by re-defining municipalities undertaking road improvement projects as "displacing agencies" through its expansion of the statutory definition of "state" found in R.C. 1.59(G). Since the application of the administrative definition would alter Westlake's substantive liability under the statute, it is invalid and of no effect.
Accordingly, we hold that because Westlake did not appropriate Waghray's interest in his leasehold in the pursuit of a "state highway project" as indicated in R.C. 163.51, he is not entitled to relocation expenses from Westlake, which does not qualify as a "displacing agency" as defined by R.C. 163.52. This assignment of error lacks merit.
 II. THE TRIAL COURT ERRED WHEN IT FAILED TO HOLD THAT THE OHIO AND UNITED STATES CONSTITUTIONS REQUIRE JUST COMPENSATION FOR THE TAKING OF INTANGIBLE BUSINESS AND PERSONAL PROPERTY BY EMINENT DOMAIN.
In order to establish a taking for purposes of governmental compensation, a landowner must demonstrate a substantial or unreasonable interference with a property right.[18] Such an interference may involve the actual physical taking of real property, or it may include the deprivation of an intangible interest in the premises.[19] In the probate court eminent domain proceedings connected to the events of this suit, Waghray received the share of the value of the property reflected in his lease interest according to the mandates of R.C. 163.01 et seq. What Waghray additionally seeks in terms of damages under this assignment of error, however, is lost profits flowing from the fact that his storefront may now be located at a less desirable location.
"The amount of profit earned from a business conducted on the condemned property is ordinarily not admissible in evidence. * * * Ohio follows this general rule by holding that the loss of future profits to be derived by a landowner whose property is taken in an appropriation proceeding is too speculative and uncertain for an accurate and satisfactory measurement of the present value of the land taken."[20]
 * * * First, in most states, loss of business, goodwill and profits are not compensable in eminent domain proceedings * * *. Secondly, business profits are thought to depend so much upon the capital employed and the future, skill and management of the business, that they furnish little test of the value of the real estate itself. The profits of a business are too uncertain, and depend on too many contingencies to be accepted as evidence of the usable value of the property upon which the business is carried on. Profits depend upon the times, the amount of capital invested, the social, religious and financial position in the community of the one carrying it on, and many other elements which might be suggested. What one man might do at a profit, another might only do at a loss. Further, even if the owner had made profits from the business in the past it does not necessarily follow that these profits will continue in the future. * * *[21]
Consequently, as a matter of law, none of Waghray's federal or state constitutional claims entitle him to damages based on lost profits resulting from the requirement that he relocate his business. This assignment of error is not well taken.
 III. THE TRIAL COURT ERRED WHEN IT FAILED TO FIND THAT GENUINE ISSUES OF MATERIAL FACTS REMAINED TO BE DECIDED AT TRIAL, AND INSTEAD GRANTED SUMMARY JUDGMENT.
 "Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.[22]
As we held above, Waghray is not entitled to relocation expenses under R.C. 163.51 et seq. because Westlake was not a "displacing agency" liable to him. Additionally, no question of material fact exists as to his constitutional claims, because they would not entitle him to the recovery he seeks, as a matter of law, in any instance. Summary judgment was validly entered, albeit on grounds different from those relied upon by this court, and this assignment of error is not well taken.
Judgment affirmed.
It is ordered that the appellee recover from appellant costs herein taxed.
This court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, J., AND FRANK D. CELEBREZZE, J., CONCUR.
[1] Westlake originally set his move-out date for December, 1997, and he wanted a final accounting for taxes and rent due.
[2] Zimmer v. Zimmer (Feb. 27, 2001), Franklin App. No. 00AP-383, unreported.
[3] R.C. 163.51(A)(1).
[4] R.C. 1.42; Morgan v. Ohio Adult Parole Auth. (1994),68 Ohio St.3d 344, 346, 626 N.E.2d 939; State v. S.R. (1992),63 Ohio St.3d 590, 595, 589 N.E.2d 1319.
[5] State v. Elam (1994), 68 Ohio St.3d 585, 587, 629 N.E.2d 442.
[6] East Ohio Gas Co. v. Limbach (1991), 61 Ohio St.3d 363, 365,575 N.E.2d 132.
[7] R.C. 4511.01(BB).
[8] Random House Webster's Unabridged Dictionary (1998), 903; Black's Law Dictionary (4 Ed.Rev. 1968) 862.
[9] R.C. 1.11.
[10] R.C. 719.01, mandating that municipalities, in appropriating land, must comply with the provisions of R.C. 163.01, et seq.
[11] Id.
[12] R.C. 5511.01.
[13] R.C. 723.01.
[14] R.C. 164.02(A).
[15] R.C. 164.01(A), defining "capital improvements" to include the improvement of roads.
[16] Central Ohio Joint Vocational School Dist. Bd. of Edn. v. OhioBur. of Emp. Serv. (1986), 21 Ohio St.3d 5, 10, 487 N.E.2d 288.
[17] See McAninch v. Crumbley (1981), 65 Ohio St.2d 31, 34,417 N.E.2d 1252, in which the Supreme Court invalidated a regulation altering a statutory definition of an "unclassified employee," and DLZCorp. v. Ohio Dept. of Admin. Services (1995), 102 Ohio App.3d 777,780-782, 658 N.E.2d 28, where the Tenth District Court of Appeals declined to apply an administrative definition of "Oriental," in the context of minority identification, that was more restrictive than commonly accepted definitions of the term, and where the governing statute itself was silent.
[18] See, e.g., State ex rel. Taylor v. Whitehead (1982),70 Ohio St.2d 37, 39, 434 N.E.2d 732, 734, and State ex rel. McKay v.Kauer (1951), 156 Ohio St. 347, 102 N.E.2d 703.
[19] Smith v. RR. Co. (1938), 134 Ohio St. 135, 11, 16 N.E.2d 310, paragraph one of the syllabus ("Under Section 19, Article I of the [Ohio] Constitution, which requires compensation to be made for private property taken for public use, any taking, whether it be physical or merely deprives the owner of an intangible interest appurtenant to the premises, entitles the owner to compensation."). See, also, State ex rel.OTR v. City of Columbus (1996), 76 Ohio St.3d 203; 667 N.E.2d 8.
[20] Wray v. Hart (Aug. 13, 1992), Lawrence App. No. 91CA20, unreported, citing In Re Appropriation for Highway Purposes (1963),174 Ohio St. 441, 190 N.E.2d 446, paragraph five of the syllabus. Seealso Cleveland Boat Services Inc. v. Cleveland (1956), 165 Ohio St. 429,136 N.E.2d 274.
[21] Wray Id.
[22] Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367,370; 696 N.E.2d 201 (internal citations omitted).