OPINION
{¶ 1} Appellants, Cleveland Cold Storage, Inc. ("CCS") and Fred Finley ("Finley") (collectively "appellants"), filed this appeal seeking reversal of a decision by the Franklin County Court of Common Pleas granting a motion to dismiss, pursuant to Civ.R. 12(B)(6), *Page 2 
to appellees, the Ohio Department of Transportation ("ODOT") and Director James Beasley ("Beasley") (collectively "appellees"). For the reasons that follow, we affirm the trial court's judgment.
 {¶ 2} The facts as alleged in the complaint are as follows. Finley is the president and sole shareholder of CCS. CCS is the owner of a building located at 2000 West 14th Street in Cleveland ("the CCS property"). In 2003, ODOT convened a committee for the purpose of considering the development of the Cleveland Innerbelt ("the Innerbelt Project"). As part of the study, ODOT identified properties that would be potentially impacted by the development. The CCS property was not included on the list of potentially impacted properties.
 {¶ 3} Finley then began taking steps to redevelop the CCS property, intending to turn the CCS property into a mixed-use building, with commercial use on the ground floor and high-end residential condominiums on the upper floors. Finley hired an architectural firm to prepare a design for the property, signed a second firm to promote the redevelopment, and hired a third company to serve as a management firm over the redevelopment. Finley also took steps to have the Cleveland City Planning Commission change the zoning in the area in which the CCS property is located from an "industrial district" to a "general retail business use district," which allows the property to be used for residential purposes.
 {¶ 4} On June 29, 2004, Finley corresponded with Cleveland Mayor Jane Campbell and appellees asking for confirmation that ODOT would not be seeking to acquire the CCS property by eminent domain for construction of the Innerbelt Project. By letter dated July 12, 2004, appellees confirmed that completion of the Innerbelt Project *Page 3 
would not require acquisition of the CCS property. Finley then began work on the planned redevelopment of the CCS property.
 {¶ 5} In a letter dated August 4, 2005, appellees informed Finley that as the result of a redesign of the Innerbelt Project, appellees would need to acquire the CCS property. The letter stated that appellees anticipated beginning the process of acquiring the property in 2007, and invited appellants to demonstrate hardship for advanced acquisition of the property. Appellants submitted a request for advance acquisition of the property based on hardship, but appellees have not taken steps to initiate that acquisition.
 {¶ 6} On August 27, 2005, purportedly due to economic hardship imposed by appellees planned acquisition of the CCS property, CCS filed Chapter 11 bankruptcy in the United States Bankruptcy Court, Northern District of Ohio. The Chapter 11 bankruptcy proceeding was subsequently converted to a Chapter 7 bankruptcy proceeding.
 {¶ 7} Appellees performed an appraisal on the CCS property and, based on that appraisal, made an offer to the bankruptcy trustee to purchase the property for $1,900,000. Appellants arranged to have another appraisal to be performed to determine the value of the CCS property based on appellants' redevelopment plan for the property. That appraisal concluded that the value of the property was between $4,425,000 and $4,450,000. On November 21, 2006, the bankruptcy trustee concluded that sale of the CCS property was not feasible, and discharged and closed the bankruptcy case.
 {¶ 8} Appellants then filed this action seeking a writ of mandamus directing appellees to initiate immediate eminent domain proceedings to acquire the CCS property, and damages arising from the delay in initiation of such proceedings. Appellees filed a *Page 4 
motion to dismiss the action pursuant to Civ.R. 12(B)(6) and 12(B)(1). The trial court granted the motion, and appellants filed this appeal, alleging three assignments of error:
 FIRST ASSIGNMENT OF ERROR
 In its August 10, 2007, decision which granted Appellees' motion to dismiss, the trial court erred by finding that Appellants' Complaint, a petition for a writ of mandamus, failed to state a claim upon which relief can be granted.
 SECOND ASSIGNMENT OF ERROR
 In its August 10, 2007, decision which granted Appellees' motion to dismiss, the trial court erred by considering extrinsic evidence beyond the scope of Civ.R. 12(B)(6), which confines review only to allegations of the pleadings in Appellants' Complaint.
 THIRD ASSIGNMENT OF ERROR
 In its August 10, 2007, decision which granted Appellees' motion to dismiss, the trial court erred by failing to find that allegations in Appellants' Complaint adequately describe Appellees' actions and inaction in this matter which constitute a pro tanto "taking" of Appellants [sic] privately owned real property by Appellee Ohio Department of Transportation.
 {¶ 9} Appellants' first and third assignments of error are interrelated, and will therefore be addressed together. In order to establish the right to a writ of mandamus, the party seeking the writ must show: (1) that the relator has a clear legal right to the relief sought, (2) that the respondent is under a clear legal duty to perform the requested act, and (3) that the relator has no plain and adequate remedy in the ordinary course of law. State ex rel. Ohio Gen. Assemblyv. Brunner, 114 Ohio St.3d 386, 2007-Ohio-3780, 872 N.E.2d 912.
 {¶ 10} In order for a court to grant a motion to dismiss, pursuant to Civ.R. 12(B)(6), it must appear that, accepting all of the allegations of the complaint as true, it appears beyond doubt that the complaining party can prove no set of facts entitling that party to *Page 5 
the relief sought. O'Brien v. Univ. Community Tenants Union (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753. Consequently, a complaint seeking a writ of mandamus is generally not appropriate for dismissal under Civ.R. 12(B)(6) where the complaint sufficiently alleges the existence of a legal duty and the lack of an adequate remedy at law, and it appears that the relator seeking the writ may prove some set of facts that would warrant issuance of the writ. State ex rel. Boggs v.Springfield Local School Dist. Bd. of Edn., 72 Ohio St.3d 94,1995-Ohio-202, 647 N.E.2d 788
 {¶ 11} Appellants' complaint states, in relevant part:
 46. From August 4, 2005, the date that ODOT confirmed its intention to acquire the CCS property by eminent domain, through the present, ODOT has effectively destroyed any potential for [appellants] to use, redevelop, or sell the CCS property to any third-party consistent with the fair market value for the highest and best use of the CCS property established by the time of ODOT's letter of August 4, 2005.
 47. ODOT's ongoing failure to acquire the CCS property by eminent domain has resulted in substantial interference and irreparable harm to [appellants'] dominion and control of the CCS property since [appellants are] unable to use the CCS property for any gainful purpose, [are] unable to redevelop the CCS property, [are] unable to sell the CCS property for a reasonable value, and [are] unable to recoup [appellants'] investment through planned redevelopment of the CCS property.
 48. Effective August 4, 2005, the above-described acts and omissions of ODOT amounted to a pro tonto [sic] taking of the CCS property without compensation to [appellants], which gives rise to a legal duty imposed on ODOT to acquire the CCS property by eminent domain on an immediate basis.
 49. For the permanent and complete taking of the CCS property by ODOT, [appellants seek] an order from this Court which compels ODOT to immediately initiate eminent domain proceedings to acquire the CCS property for its fair market value. *Page 6 
 {¶ 12} An action seeking issuance of a writ of mandamus is the appropriate means for a property owner to compel public authorities to institute proceedings to appropriate property where the property owner is alleging that an involuntary taking of private property has occurred.State ex rel. Coles v. Granville, 116 Ohio St.3d 231, 2007-Ohio-6057,877 N.E.2d 968, citing State ex rel. Shemo v. Mayfield Hts.,95 Ohio St.3d 59, 2002-Ohio-1627, 765 N.E.2d 345. In order to establish a taking, the property owner must show a substantial or unreasonable interference with a property right, which may involve an actual physical taking of the property, or deprivation of an intangible interest in the property. State ex rel. OTR v. Columbus, 76 Ohio St.3d 203,1996-Ohio-411, 667 N.E.2d 8; Smith v. Erie RR. Co. (1938),134 Ohio St. 135, 11 O.O. 571, 16 N.E.2d 310. Depriving a property owner of any valuable use of the owner's property can constitute a pro tanto, or partial, taking of the property that is subject to the constitutional protections against taking property without just compensation.OTR, supra, quoting Mansfield v. Balliett (1902), 65 Ohio St. 451, 63 N.E. 86.
 {¶ 13} Appellants' petition and complaint alleges that appellees' actions here constitute a substantial interference with their ownership and dominion over the CCS property, and alleges that these actions constitute a pro tanto taking of the property. However, the action described in the complaint that appellants alleged constituted a taking of the CCS property was not an actual physical interference with the CCS property, but rather was ODOT's statement of its intention to acquire the CCS property as part of the Innerbelt Project at some point in the future.
 {¶ 14} This court has held that "the mere expression or conveyance of an intent to take private property in the future * * * is not such a substantial interference with private *Page 7 
property as to constitute a `taking.'" J.P. Sand Gravel Co. v.State (1976), 51 Ohio App.2d 83, 5 O.O.3d 239, 367 N.E.2d 54. We reiterated this holding in State ex rel. Johnson v. Jackson, Franklin App. No. 77AP-305, 1977 Ohio App. LEXIS 7405, holding that dismissal is appropriate where a petition seeking a writ of mandamus alleges only an expression of intent to acquire property in the future.
 {¶ 15} Applying J.P. Sand Gravel and Johnson, dismissal of appellants' petition and complaint was warranted, because the representations made by ODOT constituted only a statement of intention to acquire the CCS property in the future, and therefore did not constitute a "taking" requiring ODOT to institute appropriation proceedings. Appellants seek to distinguish Johnson, arguing that the situation here differs because appellants sought and received personal assurances from ODOT regarding whether ODOT would be acquiring the CCS property, and that appellants acted on those assurances by investing significant funds in redevelopment of the property. The distinctions urged by appellants may relate to the value of the property when ODOT does initiate proceedings to acquire the CCS property, but ODOT's subsequent change to the initial plans does not itself constitute a "taking" giving rise to a duty to institute appropriation proceedings. Moreover, we note that even if these distinctions did provide a basis not to follow Johnson, J.P. Sand Gravel did involve affirmative efforts on the part of the property owner to ensure that there was no intention to acquire the property at issue, and therefore the same distinctions would not apply.
 {¶ 16} Accordingly, the trial court did not err when it dismissed appellants' petition and complaint for failure to state a claim for which relief can be granted pursuant to Civ.R. 12(B)(6). Therefore, appellants' first and third assignments of error are overruled. *Page 8 
 {¶ 17} In their second assignment of error, appellants argue that the trial court erred when it considered evidentiary materials outside the pleadings in deciding appellees' Civ.R. 12(B)(6) motion. Generally, a court considering a Civ.R. 12(B)(6) motion cannot consider matters outside the pleadings without converting the motion into a motion for summary judgment under Civ.R. 56 and providing the parties with an opportunity to submit additional evidentiary materials.
 {¶ 18} In this case, the trial court specifically stated that it did not consider any matters outside the pleadings in reaching its decision. Our review of the pleadings verifies that dismissal was appropriate based solely on the allegations of the pleadings, and without regard to any evidentiary materials not contained in the pleadings. Therefore, appellants' second assignment of error is overruled.
 {¶ 19} Having overruled appellants' three assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
 McGRATH, P.J., and BRYANT, J., concur. *Page 1