The STATE ex rel. HILLTOP BASIC RESOURCES, INC., et al.,

v.

CITY OF CINCINNATI.

[Cite as *State ex rel. Hilltop Basic Resources, Inc. v. Cincinnati,* 166 Ohio App.3d 171, 2005-Ohio-6817.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–050774.

Decided Dec. 23, 2005.

---

18.   *Doggett,* 505 U.S at 655, 112 S.Ct. 2686, 120 L.Ed.2d 520.

19.   Id.

172

Gary E. Powell and Timothy M. Burke, for relator Hilltop Basic Resources, Inc.

Michael P. McNamee and Gregory B. O'Connor, for relator Queensgate Terminals, L.L.C.

Julia L. McNeil, Cincinnati City Solicitor, and Geri Hernandez Geiler, Senior Assistant City Solicitor, for respondent.

---

MARK P. PAINTER, Judge.

{¶ 1} Relators, Hilltop Basic Resources, Inc., and Queensgate Terminals, L.L.C., have brought a verified petition for a writ of mandamus concerning a 30–acre piece of riverfront property along River Road in Cincinnati. Hilltop and Queensgate contend that respondent city of Cincinnati's refusal to allow them to have access from the River Road property to a public road constitutes a taking of their property interests. They ask this court to order the city to bring an eminent-domain action to value the interests taken. The city has moved to dismiss under Civ.R. 12(B)(6), claiming that Hilltop and Queensgate have failed to state a claim upon which relief may be granted.

{¶ 2} The city contends that Hilltop and Queensgate have failed to exhaust their administrative remedies, thus precluding them from seeking mandamus. But the city is mistaken in its belief that Hilltop and Queensgate could have appealed the denial of the curb-cut/driveway permit to the Sidewalk Board of Appeals or to the court of common pleas. And mandamus is the appropriate action to compel public authorities to institute appropriation proceedings where an involuntary taking of private property is alleged. For these reasons, we overrule the city's motion to dismiss.

## I. Whether to Permit a Driveway

{¶ 3} When reviewing a motion to dismiss, we must presume that "all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party."[1] Thus we state the facts as the relators related them.

{¶ 4} Hilltop acquired approximately 30 acres of riverfront property along River Road, west of Cincinnati's central business district, in 1991. Because the property is separated from River Road by two rail lines and does not have any other access to a public roadway, Hilltop acquired a fee simple interest in the ground under the railroads at the intersection of River Road and State Avenue.

{¶ 5} In 1995, Hilltop applied to the city for a building permit, which included a proposed curb-cut/driveway onto River Road at the intersection of River Road and State Avenue. The city approved the building permit in 1996. But Hilltop did not develop the property at that time and let the permit expire.

---

1. *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753.

{¶ 6} In 2001, the city and Hilltop applied for a federal grant to assist in the development of the River Road property as an "intermodal truck/barge/train facility" that would use the access onto River Road at the State Avenue intersection for heavy truck traffic. The city's application asserted that one of the reasons for the grant request was to "open the essentially land locked 30–acre site for development as a commercial intermodal facility."

{¶ 7} In May 2004, Hilltop and Queensgate agreed to a "Lease Agreement with Purchase Option." Queensgate intended to develop the River Road property as an intermodal barge-to-rail facility that would serve as part of a broader national transportation network. Queensgate already is developing a 2,500–acre site in central Ohio for a national distribution and manufacturing center that is being marketed by the state of Ohio and Miller–Valentine Realty.

{¶ 8} A year later, Queensgate requested information from the city about the permits necessary to initiate operations on the River Road property. In response to that request, the city made Queensgate and Hilltop aware of the planned Waldvogel Viaduct Improvement Project. The city's Transportation and Engineering Department intended to raise the elevation of River Road adjoining the River Road property and to construct a wall along River Road that would eliminate the River Road property's only access to a public roadway. Queensgate and Hilltop allege that the city developed these plans in the fall of 2004, but failed to alert them.

{¶ 9} At a meeting with the city's Traffic Engineer, the Director of the Engineering Department, and representatives from the City Solicitor's Office, Queensgate and Hilltop were told that the city would never permit them to use the River Road access—in effect killing the deal and thwarting plans for the development of a major transportation facility. In August 2005, Hilltop tried to save the contract to sell the property to Queensgate by reapplying for the curb-cut/driveway permit that had been granted in 1996. But in September 2005, the city denied the permit application.

## II. Motion to Dismiss

{¶ 10} For a court to dismiss a relator's verified petition for a writ of mandamus under Civ.R. 12(B)(6) for failure to state a claim, it must appear beyond doubt from the complaint that the relator can prove no set of facts entitling it to recovery.[2] "[A]s long as there is a set of facts, consistent with the

---

2. *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753, syllabus.

plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss." [3]

{¶ 11} The city argues that Hilltop and Queensgate have failed to state a claim because they have failed to exhaust their administrative remedies. The city's argument claims that Hilltop and Queensgate could have appealed the city's decision denying them a permit for curb-cut and driveway construction to either (1) the city's Sidewalk Board of Appeals under Cincinnati Municipal Code ("CMC") 721–155 or (2) the court of common pleas under R.C. 2506.01. Not so.

### III. The Sidewalk Board

{¶ 12} To be appealable under CMC 721–155, a decision must be subject to the jurisdiction of the city's Sidewalk Board of Appeals, and the municipal code must authorize an appeal from a denial of a curb-cut/driveway permit. The code provides that the Sidewalk Board of Appeals "shall hear and determine any protests filed by property owners or their agents as to sidewalks, curb, or gutter construction, reconstruction or repair, the surfacing of driveways and parking lots, or appeals from owners dissatisfied with any modification authorized by the city engineer under § 721–145." [4]

{¶ 13} But the city's argument fails under a plain reading of the code. The Sidewalk Board of Appeals's jurisdiction does not appear to include an appeal from a denial of a permit for a curb-cut/driveway. While the code allows for protests from property owners who object to having to replace a sidewalk or curb and appeals from owners who are "dissatisfied with any modification authorized by the city engineer," this is not such a case. There was no modification from the code's requirements "so as to * * * avoid undue hardship on the owner." [5] Instead of a modification so as to allow the permit, the city simply denied the application for a permit.

{¶ 14} If the city truly intended for property owners who applied for curb-cuts/driveways to have access to public roadways to have a right of appeal to the Sidewalk Board of Appeals, then the city should have included such a provision in the jurisdiction of the board. As it remains, the Sidewalk Board of Appeals can determine protests from owners about sidewalk, curb, and gutter construction, and the surfacing of driveways and parking lots, and appeals from modifications authorized by the city engineer. The surfacing of a driveway is much different from the construction of a driveway. Since the present case covers matters

---

3. *York v. Ohio State Hwy. Patrol* (1991), 60 Ohio St.3d 143, 144–145, 573 N.E.2d 1063.

4. CMC 721–155.

5. CMC 721–145.

outside the enumerated jurisdiction of the Sidewalk Board of Appeals, we must conclude that Hilltop and Queensgate could not have appealed to a board that does not have proper subject-matter jurisdiction. Moreover, this board, which is set up to worry about whether someone must replace a sidewalk or properly pave a parking lot, hardly seems the place to litigate a multimillion-dollar issue.

### IV. No Way to Appeal

{¶ 15} In the alternative (meaning "if you don't buy the first argument, maybe this one will fool you"), the city argues that Hilltop and Queensgate should have appealed to the court of common pleas. To be appealable under R.C. 2506.01, an administrative decision must be rendered in a quasi-judicial proceeding.[6] The earmarks of a quasi-judicial proceeding include requirements of notice, a hearing, and an opportunity to introduce evidence.[7] "Whether there is an adjudication depends not upon what the administrative agency actually did, but rather upon what the administrative agency should have done. Where the administrative agency should have given notice, conducted a hearing and afforded the parties an opportunity to be heard and to introduce evidence, the order is the result of an adjudication even if the administrative agency fails to afford such notice and hearing."[8] That is, if the agency should have had a hearing but refused, then the aggrieved party can appeal to the common pleas court.

{¶ 16} None of the features of a quasi-judicial setting were available to Hilltop and Queensgate. There was no hearing, opportunity to introduce evidence, or potentiality to interview witnesses. There was not even any procedure for doing so.

{¶ 17} In its oral argument, the city contended that our decision in *State ex rel. Fern v. Cincinnati*[9] requires us to rule that even though no hearing was given by the city to Hilltop and Queensgate, they needed to appeal to the court of common pleas. But the city has misinterpreted *Fern.*

{¶ 18} In *Fern*, we noted that the Cincinnati Civil Service Commission had rules that required the commission to conduct a quasi-judicial hearing when an

---

6. See *State ex rel. Fern v. Cincinnati*, 161 Ohio App.3d 804, 2005-Ohio-3168, 832 N.E.2d 106, ¶ 51, citing *M.J. Kelley Co. v. Cleveland* (1972), 32 Ohio St.2d 150, 61 O.O.2d 394, 290 N.E.2d 562, paragraph one of the syllabus; *McArthur v. DeSouza* (1992), 65 Ohio St.3d 25, 28, 599 N.E.2d 268.

7. Id., citing *M.J. Kelley Co.*, supra, at paragraph two of the syllabus; *Lakota Local School Dist. Bd. of Edn. v. Brickner* (1996), 108 Ohio App.3d 637, 644, 671 N.E.2d 578.

8. Id., citing *In re Howard* (1991), 73 Ohio App.3d 717, 719, 598 N.E.2d 165.

9. Id.

employee appealed a promotional exam.[10] But the commission did not hold a hearing or allow any evidence to be presented, and the commission denied the appeal. (To be fair to the commission, it believed it did not have jurisdiction to hold the hearing, relying on our previous decision of *Steers v. Cincinnati*,[11] which we overruled in *Fern* ). Despite the commission's failure to hold a hearing, we held in *Fern* that the commission's decision to deny the employee's appeal was a final, appealable order from a quasi-judicial hearing. The crux of our decision was not what the administrative agency did, but rather what the administrative agency should have done. Where the administrative agency should have given notice, conducted a hearing, and afforded the parties an opportunity to be heard and to introduce evidence, it was engaged in quasi-judicial proceedings under R.C. 2506.01. The Civil Service Commission is a quasi-judicial body. But in this case, there are no rules or guidelines for the city engineer to follow to institute such a proceeding—there is simply no quasi- or even semi- or pseudo-judicial hearing to convene.

{¶ 19} If the municipal code provided for the city engineer to approve or deny permits in a quasi-judicial setting—by hearing witnesses and producing a transcript, with other hallmarks of a judicial setting, then appeal to the court of common pleas would be proper. But the code does not provide that type of due process for permit applications to the city engineer. Thus Hilltop and Queensgate could not have directly appealed to the common pleas court.

### V. Writ of Mandamus Appropriate

{¶ 20} A writ of mandamus is an extraordinary remedy. Mandamus is a writ that commands the "performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station."[12] To be entitled to writ of mandamus, Hilltop and Queensgate will need to establish a clear legal right to compel the city to commence an appropriation action, a corresponding legal duty for the city to institute such an action, and the lack of an adequate remedy in the ordinary course of the law.[13]

{¶ 21} The Ohio Constitution provides, "Private property shall ever be held inviolate, but subservient to the public welfare. * * * where private property shall be taken for public use, a compensation therefor shall first be made in

---

10. Id.

11. *Steers v. Cincinnati* (1992), 78 Ohio App.3d 437, 605 N.E.2d 400.

12. R.C. 2731.01.

13. See *State ex rel. Savage v. Caltrider,* 100 Ohio St.3d 363, 2003-Ohio-6806, 800 N.E.2d 358, at ¶ 8.

money * * * and such compensation shall be assessed by a jury, without deduction for benefits to any property of the owner." [14]    Similarly, the Fifth Amendment to the United States Constitution guarantees that private property shall not "be taken for public use, without just compensation."

{¶ 22} To establish a taking, a landowner must demonstrate a substantial or unreasonable interference with a property right.[15]    That interference may involve the actual physical taking of real property, or it may include the deprivation of an intangible interest in the premises.[16]

{¶ 23} One of the elemental rights of real property ownership is the right of access to abutting public roadways.[17]    "An owner of property abutting on a public highway possesses, as a matter of law, not only the right to the use of the highway in common with other members of the public, but also *a private right or easement* for the purpose of ingress and egress to and from his property, which latter right may not be taken away or destroyed or substantially impaired without compensation therefor." [18]

{¶ 24} Based on the facts alleged by Hilltop and Queensgate, there appears to be a clear legal right for them to compel the city to begin appropriate hearings.    The law in Ohio is clear: an owner of real property has a right of access to public streets or highways that the property abuts.    Therefore, any governmental action that substantially or unreasonably interferes with this right constitutes a taking of private property within the meaning of Section 19, Article I of the Ohio Constitution and the Fifth Amendment to the United States Constitution.    Here, it seems that the city proposes to landlock the 30 acres, not just legally, but actually—by making the property inaccessible from land.

{¶ 25} Despite the extraordinary nature of a writ of mandamus, the Ohio Supreme Court has held that "[m]andamus is the appropriate action to compel public authorities to institute appropriation proceedings · where an involuntary

---

14.  Section 19, Article I, Ohio Constitution.

15.  See, e.g., *State ex rel. Taylor v. Whitehead* (1982), 70 Ohio St.2d 37, 39, 24 O.O.3d 88, 434 N.E.2d 732;  and *State ex rel. McKay v. Kauer* (1951), 156 Ohio St. 347, 46 O.O. 204, 102 N.E.2d 703.

16.  See *Smith v. RR. Co.* (1938), 134 Ohio St. 135, 11 O.O. 571, 16 N.E.2d 310, paragraph one of the syllabus.

17.  See *State ex rel. OTR v. Columbus* (1996), 76 Ohio St.3d 203, 207, 667 N.E.2d 8.

18.  (Emphasis sic.)  Id., citing *State ex rel. Merritt v. Linzell* (1955), 163 Ohio St. 97, 56 O.O. 166, 126 N.E.2d 53, paragraph one of the syllabus.

taking of private property is alleged."[19]  Based on the facts before us in this motion to dismiss, we believe that mandamus may well be appropriate.  But of course the city may present facts or circumstances that could alter that opinion.

{¶ 26} The city's motion to dismiss is denied.  The city has 14 days from the notice of our decision to file a responsive pleading to Hilltop's and Queensgate's petition for a writ of mandamus.[20]

Motion denied.

DOAN, P.J., and SUNDERMANN, J., concur.

---

19.  *State ex rel. Duncan v. Mentor,* 105 Ohio St.3d 372, 2005-Ohio-2163, 826 N.E.2d 832, at ¶ 11, citing *State ex rel. Shemo v. Mayfield Hts.,* 95 Ohio St.3d 59, 63, 765 N.E.2d 345.

20.  Civ.R. 12