The STATE of Ohio ex rel. HILLTOP BASIC RESOURCES, INC. et al.

v.

CITY OF CINCINNATI.

[Cite as *State ex rel. Hilltop Basic Resources, Inc. v. Cincinnati,*
167 Ohio App.3d 798, 2006-Ohio-3348.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–050774.

Decided June 30, 2006.

Gary E. Powell and Timothy M. Burke, for relator Hilltop Basic Resources, Inc.

Michael P. McNamee and Gregory B. O'Connor, for relator Queensgate Terminals, L.L.C.

Julia L. McNeil, City Solicitor, and Geri Hernandez Geiler, Senior Assistant City Solicitor, for respondent.

MARK P. PAINTER, Judge.

{¶ 1} When the government takes property, it must pay compensation. And taking isn't limited to physical confiscation—it can also be by impairing the property's value by, as here, cutting off access.

{¶ 2} In this case, the city of Cincinnati has denied access to a piece of property, leaving it landlocked—and not just figuratively, but literally: the only access would be by boat. Cincinnati not being Waterworld, boat access is not sufficient. Though the city makes a series of bizarre arguments attempting to support its position, its legal position is as wet as the access it would leave the property owners.

## I.  Access by River Only

{¶ 3} Relators Hilltop Basic Resources, Inc. and Queensgate Terminals, L.L.C. have brought a verified petition for a writ of mandamus concerning a 30–acre

piece of riverfront property along River Road in Cincinnati. They contend that respondent city of Cincinnati's refusal to allow them to have access from the River Road property to a public road is a taking of their property interests. They ask this court to order the city to bring an eminent-domain action to value the interests taken.

{¶ 4} In a previous decision on the city's motion to dismiss, the city contended that Hilltop and Queensgate had failed to exhaust their administrative remedies, thus precluding them from seeking mandamus.[1] But we ruled that Hilltop and Queensgate could not have appealed the city's denial of a curb-cut/driveway permit to an entity named the Sidewalk Board of Appeals or to the court of common pleas.[2] And we held that mandamus is proper to compel a public body to bring appropriation proceedings for an involuntary taking of private property.[3]

{¶ 5} The parties are now again before us on dueling summary-judgment motions. Hilltop and Queensgate argue that the city has substantially and unreasonably interfered with their right of access to the only public street adjoining the property by denying their request for a curb-cut permit. Hilltop and Queensgate believe that this denial requires the city to begin appropriation proceedings to determine the value of their property interests.

{¶ 6} The city contends that Hilltop and Queensgate have not proved that they have a right of access to River Road because Hilltop has not taken any steps to develop the property. The city contends that this lack of development and the lack of reliance by Hilltop or Queensgate on the current grade of River Road have extinguished any right of Hilltop or Queensgate to the writ of mandamus.

{¶ 7} Also, the city claims that (1) "ingress and egress" or "access" to a public roadway is not synonymous with vehicular access and (2) the city's plan to create a retaining wall along River Road does not amount to a compensable taking. Instead, the city asserts that since Hilltop currently has another access to a public road, albeit through a license agreement with an adjoining property owner, there is no substantial or unreasonable interference with access to River Road.

{¶ 8} Lawyers can make an argument for any proposition. We understand it's their job. Here, the city argues two legally untenable positions. The city's brief even reads well; but the city's arguments are fallacious.

---

**1.** See *State ex rel. Hilltop Basic Resources, Inc. v. Cincinnati,* 166 Ohio App.3d 171, 2005-Ohio-6817, 849 N.E.2d 1064.

**2.** Id. at ¶ 11–17.

**3.** Id. at ¶ 23, citing *State ex rel. Duncan v. Mentor,* 105 Ohio St.3d 372, 2005-Ohio-2163, 826 N.E.2d 832, at ¶ 11, citing *State ex rel. Shemo v. Mayfield Hts.,* 95 Ohio St.3d 59, 2002-Ohio-1627, 765 N.E.2d 345.

■ {¶ 9} Hilltop and Queensgate have a clear legal right to compel the city to begin appropriation proceedings. The law in Ohio is clear: "An owner of a parcel of real property has a right to access public streets or highways on which the land abuts. Therefore, any governmental action that substantially or unreasonably interferes with this right constitutes a taking of private property within the meaning of Section 19, Article I of the Ohio Constitution and the Fifth Amendment to the United States Constitution." [4] Here, the city's denial of Hilltop's and Queensgate's curb-cut/driveway permit leaves Hilltop and Queensgate with no adequate remedy in the ordinary course of the law. The city must bring an appropriation action—thus the writ of mandamus must issue.

## II. The Proposed Project

{¶ 10} Hilltop acquired approximately 30 acres of riverfront property along River Road, west of Cincinnati's central business district, in 1991. Because the property is separated from River Road by two rail lines and does not have any other access to a public roadway, Hilltop acquired a fee simple interest in the ground under the railroads at the intersection of River Road and State Avenue.

{¶ 11} In 1995, Hilltop applied to the city for a building permit, which included a proposed curb-cut and driveway onto River Road at the intersection of River Road and State Avenue. The city approved the building permit in 1996. But Hilltop did not develop the property then and let the permit expire.

{¶ 12} In 2001, the city and Hilltop (together) applied for a federal grant to develop the River Road property as an "intermodal truck/barge/train facility" that would use the access onto River Road at the State Avenue intersection for heavy truck traffic. The city's application asserted that one reason for the grant request was to "open the essentially land locked 30–acre site for development as a commercial intermodal facility."

{¶ 13} In May 2004, Hilltop and Queensgate agreed to a "Lease Agreement with Purchase Option." Queensgate intended to develop the River Road property as an intermodal barge-to-rail facility that would serve as part of a broader national transportation network. Queensgate already is developing a 2,500–acre site in central Ohio for a national distribution and manufacturing center marketed by the state of Ohio and Miller–Valentine Realty.

## III. The City Switches

{¶ 14} A year later, Queensgate asked the city about the permits necessary to begin to develop the River Road property. In responding, the city told Queens-

---

4. *State ex rel. OTR v. Columbus* (1996), 76 Ohio St.3d 203, 667 N.E.2d 8, syllabus.

gate and Hilltop about the planned Waldvogel Viaduct Improvement Project. The city had evidently switched sides and was no longer cooperating on the intermodal project.

## IV.   The Waldvogel Viaduct

{¶ 15} The Edward N. Waldvogel Memorial Viaduct is a 2,690–foot bridge in Lower Price Hill that carries more than 50,000 vehicles a day.   The Waldvogel Viaduct is an important connection to the central business district for many of Cincinnati's western neighborhoods and suburbs.   Although the viaduct is a "critical link in the regional transportation system," [5] it (1) has the lowest bridge sufficiency rating in Hamilton County (3.3 out of 100), (2) has a 16–ton weight restriction, (3) has poor geometry, and (4) does not meet current design standards.   The city has thus developed plans to remove the deficient structure and replace it with a bridge that would meet current Ohio Department of Transportation design standards.

{¶ 16} To do so, the city's Transportation and Engineering Department intends to elevate River Road adjoining the River Road property by seven feet and to build a retaining wall along River Road that would eliminate the River Road property's only access to a public roadway.   Queensgate and Hilltop assert that the city developed these plans in the fall of 2004, but failed to alert them.

{¶ 17} At a meeting with the city's Traffic Engineer, the Director of the Engineering Department, and representatives from the City Solicitor's Office, the city told Queensgate and Hilltop that the city would never permit them to use the River Road access—in effect killing the deal and thwarting plans for developing a major transportation facility.   In August 2005, Hilltop tried to save the contract to sell the property to Queensgate by reapplying for the curb-cut/driveway permit the city had granted in 1996.   But in September 2005, the city denied the permit application.

## V.   Motion to Dismiss

{¶ 18} In the first hearing before us on the city's motion to dismiss and then subsequently in its answer to Hilltop and Queensgate's petition for a writ of mandamus, the city claimed that Hilltop and Queensgate failed to state a claim because they had failed to exhaust their administrative remedies.   The city argued that Hilltop and Queensgate could have appealed the city's decision denying them a permit for curb-cut and driveway construction to either (1) the

---

5.  Affidavit of Richard Szekeresh, Cincinnati Department of Transportation and Engineering, ¶ 5.

city's Sidewalk Board of Appeals, under Cincinnati Municipal Code ("CMC") 721–155, or (2) the court of common pleas under R.C. 2506.01. But as our previous decision in this case explained, Hilltop and Queensgate could not appeal to the Sidewalk Board of Appeals because that board did not have jurisdiction.[6] Further, Hilltop and Queensgate could not appeal to the common pleas court under R.C. 2506.01, since there was no administrative decision made in a quasi-judicial proceeding from which to appeal.[7] The city has now abandoned this argument for purposes of its summary-judgment motion.

## VI.   Both Sides Want Summary Judgment

{¶ 19} Summary judgment should be granted only when (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can only come to a conclusion adverse to the nonmoving party, when viewing the evidence in the light most favorable to the nonmoving party.[8] A party moving for summary judgment bears the initial burden of demonstrating that no genuine issue of material fact exists. Once it has satisfied its burden, the nonmoving party has a reciprocal burden to set out specific facts showing a genuine issue for trial.[9]

{¶ 20} Hilltop and Queensgate assert that there is no genuine issue about any material fact and that they are entitled to judgment as a matter of law because (1) the city's refusal to permit a curb-cut and driveway is an involuntary taking of their property without compensation in violation of Section 19, Article I of the Ohio Constitution and the Fifth Amendment to the United States Constitution and (2) the city must bring appropriation proceedings to determine the value of the property interests taken.

{¶ 21} The city opposes Hilltop and Queensgate's motion, but also contends that it is entitled to summary judgment because Hilltop and Queensgate do not have an absolute right of access to River Road and therefore are not entitled to compensation for a taking of their property.

## VII.   Mandamus Appropriate

{¶ 22} A writ of mandamus is an extraordinary remedy. Mandamus is a writ that commands the "performance of an act which the law specially enjoins as

6.   *Hilltop*, 166 Ohio App.3d 171, 2005-Ohio-6817, 849 N.E.2d 1064, at ¶ 11–13.

7.   Id. at ¶ 14–18, citing *State ex rel. Fern v. Cincinnati*, 161 Ohio App.3d 804, 2005-Ohio-3168, 832 N.E.2d 106, at ¶ 51.

8.   Civ.R. 56(C); *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267.

9.   See *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264.

a duty resulting from an office, trust, or station."[10] For a writ of mandamus to issue, Hilltop and Queensgate need to establish (1) a clear legal right to compel the city to commence an appropriation action, (2) a corresponding legal duty for the city to institute such an action, and (3) the lack of an adequate remedy in the ordinary course of the law.[11]

{¶ 23} The Ohio Constitution provides that "[p]rivate property shall ever be held inviolate, but subservient to the public welfare. * * * [W]here private property shall be taken for public use, a compensation therefor shall first be made in money * * * and such compensation shall be assessed by a jury, without deduction for benefits to any property of the owner."[12] Similarly, the Fifth Amendment to the United States Constitution guarantees that private property shall not "be taken for public use, without just compensation."

{¶ 24} To establish a taking, a landowner must show a substantial or unreasonable interference with a property right.[13] That interference may involve the actual physical taking of real property, or it may include impairing an intangible interest.[14]

{¶ 25} One of the elemental rights of real property ownership is the right of access to abutting public roadways.[15] " 'An owner of property abutting on a public highway possesses, as a matter of law, not only the right to the use of the highway in common with other members of the public, but also a *private right or easement* for the purpose of ingress and egress to and from his property, which latter right may not be taken away or destroyed or substantially impaired without compensation therefor.' (Emphasis added.)"[16]

---

10. R.C. 2731.01.

11. See *State ex rel. Savage v. Caltrider*, 100 Ohio St.3d 363, 2003-Ohio-6806, 800 N.E.2d 358, at ¶ 8.

12. Section 19, Article I, Ohio Constitution.

13. See, e.g., *State ex rel. Taylor v. Whitehead* (1982), 70 Ohio St.2d 37, 39, 24 O.O.3d 88, 434 N.E.2d 732; *State ex rel. McKay v. Kauer* (1951), 156 Ohio St. 347, 46 O.O. 204, 102 N.E.2d 703.

14. See *Smith v. Erie RR. Co.* (1938), 134 Ohio St. 135, 11 O.O. 571, 16 N.E.2d 310, paragraph one of the syllabus.

15. See *State ex rel. OTR v. Columbus*, 76 Ohio St.3d 203, 207, 667 N.E.2d 8.

16. Id., quoting *State ex rel. Merritt v. Linzell* (1955), 163 Ohio St. 97, 56 O.O. 166, 126 N.E.2d 53, paragraph one of the syllabus.

■ {¶ 26} Based on the affidavits and stipulations of both the city and Hilltop and Queensgate, Hilltop and Queensgate have a clear legal right to compel the city to begin appropriation proceedings. The law in Ohio is clear: "An owner of a parcel of real property has a right to access public streets or highways on which the land abuts. Therefore, any governmental action that substantially or unreasonably interferes with this right constitutes a taking of private property within the meaning of Section 19, Article I of the Ohio Constitution and the Fifth Amendment to the United States Constitution." [17] Here, with the city's denial of Hilltop and Queensgate's curb-cut/driveway permit, the city proposes to landlock the 30 acres, not just legally, but actually—by making the property inaccessible from land.

### VIII.  No Requirement that Property Be "Developed"

{¶ 27} The city, relying on the Ohio Supreme Court's decision in State ex rel. OTR v. Columbus, and in particular Justice Cook's dissent, contends that there can be a compensable taking only when the government has established a street grade, a property owner has subsequently developed the land in reliance upon that grade, and a change in that grade has affected the property owner's existing right of access to the property.[18] The city argues that the timing of the roadway construction and pre-existing development of abutting properties are necessary elements in determining whether a compensable taking has occurred. When a party relies on a dissent, but the majority decision is binding on us, its argument is looking bleak.

{¶ 28} In State ex rel. McKay v. Kauer, the Ohio Supreme Court stated that "[w]here the grade of a street constituting a part of a state highway has been established and the owner of the property abutting thereon has improved his property in reliance upon and in conformity to such grade, and thereafter a highway improvement is made upon such street * * * to such extent that there is no physical access to or from the property to the street, the owner of such property suffers a 'taking' of his property and is entitled to compensation by way of damages from the state to the extent of his loss, even though no part of the physical property is taken or disturbed." [19]

{¶ 29} The city has grasped at this language, insisting that a property owner must have "improved his property in reliance upon and in conformity to such grade." But the city's reliance on this language, further misunderstood by

17. Id. at syllabus.

18. Id. at 210–211, 667 N.E.2d 8.

19. McKay, 156 Ohio St. 347, 46 O.O. 204, 102 N.E.2d 703, paragraph two of the syllabus.

Justice Cook's dissent in *OTR*, is misplaced. Both the city and Justice Cook's dissent attempt to engraft the "improved" language onto takings jurisprudence. But both share a misperception. *McKay* simply stands for the sensible proposition that an owner who develops property in reliance upon the city's grading of the roadway is entitled to compensation if the city changes the grade to the detriment of the development. This holding in no way *requires* that the property be developed if the city cuts off access entirely!

{¶ 30} In fact, a careful reading of the *OTR* decision demonstrates that the Ohio Supreme Court had disapproved as a " 'judicial fiat' an arbitrary distinction between developed and undeveloped rights of access." [20]

{¶ 31} The court has instead held that "[a]n owner of a parcel of real property has a right to access public streets or highways on which the land abuts. Therefore, any governmental action that substantially or unreasonably interferes with this right constitutes a taking * * * within the meaning of Section 19, Article I of the Ohio Constitution and the Fifth Amendment to the United States Constitution." [21]

{¶ 32} This language is unambiguous. *OTR* does not make a distinction between property owners who have developed their land and those who have not. The city's argument would undermine the rights of all property owners who have yet to develop their land—the government could landlock undeveloped property with impunity. So a parcel with an outhouse would be protected, but not one without. To so state the issue is to see the result—undeveloped land is no less private property than developed land.

### IX. Another Feckless Argument—Ingress and Egress

{¶ 33} The city also maintains that merely having "ingress and egress" or "access" to an abutting public road is not synonymous with a property owner's necessarily having a driveway or vehicular access, relying on the Ninth Appellate District's decision in *Spencer v. Myers*. [22]

{¶ 34} In *Myers*, the property owners bought a lot on which the garage and driveway extended over the property line and encroached on the abutting public road. [23] When the village attempted to improve the street, the property owners refused to move their garage and driveway. The village then sought a declara-

---

20. *OTR*, 76 Ohio St.3d at 209, 667 N.E.2d 8.

21. Id. at syllabus.

22. See *Spencer v. Myers* (July 8, 1998), 9th Dist. No. 2710–M, 1998 WL 388997.

23. Id.

tion that the disputed portion of that road was a publicly dedicated street and that the property owners had not acquired the disputed portion by adverse possession. The property owners counterclaimed that they had adversely possessed the disputed portion of the street and demanded compensation for any land taken by eminent domain for road improvements. The Ninth Appellate District commented that " 'ingress and egress' does not refer to one's ability to proceed into property by means of a driveway, but rather to access to public streets from one's property." [24] That court held that the property owners were not entitled to compensation for the loss of their garage and driveway, since they had no right to have the garage and driveway on public property.[25]

{¶ 35} The city seems to contend that this dicta holds that property owners are not necessarily entitled to a driveway or vehicular access to their property. It again shows that lawyers who have an incentive to do so can read any case to say anything. We have to believe that the court meant to say only that *these* property owners did not have a right to *that* driveway, since it was built upon public property. No one here is asking to build a garage on city property. They just want access to their own property.

{¶ 36} We instead believe that the Ohio Supreme Court's decisions in *OTR* and *State ex rel. Merritt v. Linzell* [26] have unambiguous holdings—"An owner of property abutting on a public highway possesses, as a matter of law, not only the right to use of the highway in common with other members of the public, but also a private right or easement for the purpose of ingress and egress to and from his property, which latter right may not be taken away or destroyed or substantially impaired without compensation therefor." [27]

{¶ 37} While the property owners in *Myers* may have had other outlets for building a driveway onto the abutting public roads, in the present case, Hilltop and Queensgate have no such ability. The property in question borders the Ohio River to the south, River Road to the north, and abutting property owners to the east and west. Without a curb-cut and driveway onto River Road, Hilltop and Queensgate would be left with 30 acres of landlocked property.

## X. *Circuity of Travel*

{¶ 38} The city does not believe that Hilltop and Queensgate will be landlocked because of the denial of the curb-cut/driveway permit. Instead, it points to the

24. Id.

25. Id.

26. See *State ex rel. Merritt v. Linzell* (1955), 163 Ohio St. 97, 56 O.O. 166, 126 N.E.2d 53.

27. Id. at paragraph one of the syllabus.

license agreement that Hilltop has secured from an adjacent property owner. Again, the city cites an inapposite case for a goofy proposition.

{¶ 39} The city relies on the Ohio Supreme Court's holding in *State ex rel. Preschool Dev., Ltd. v. Springboro* for the proposition the mere circuity of travel does not warrant a finding of a compensable taking.[28] In that case, Preschool Development had sought a writ of mandamus to force the city of Springboro to bring an appropriation action after Springboro had eliminated a curb-cut in front of Preschool Development's property. While Preschool Development no longer had direct access to S.R. 73, Springboro granted Preschool Development and the public a permanent easement between Preschool Development's property and S.R. 73 through an adjacent shopping center. The court held that even though drivers were required to negotiate an additional turn and travel an extra 300 feet, Preschool Development did not incur a compensable taking.[29] The court concluded that the mere circuity of travel, or lack of a straightforward alternative, did not substantially or unreasonably interfere with Preschool Development's property rights.[30]

{¶ 40} In this case, the city is correct that when Hilltop purchased the property in 1991, it secured a license from an adjacent property owner. This license allowed Hilltop to have access to the property by crossing over land owned by other parties. But this license agreement is revocable at will by the abutting property owner upon five days' notice.

{¶ 41} Then, the circuity of travel would be to go by boat. Or perhaps waterskis?

{¶ 42} We cannot accept the city's argument. To do so would put Hilltop and Queensgate at the mercy of an abutting property owner, who at a whim could halt Hilltop and Queensgate's access to the property within five days. This is wholly distinguishable from the permanent easement granted to Preschool Development. If the license here is revoked, which it can be on five days' notice, Hilltop is left with boat access only—not just a bit longer driveway. We venture to guess that no one would build a barge-to-rail facility on the strength of a revocable license.

## XI. Writ Granted

{¶ 43} Despite the extraordinary nature of a writ of mandamus, the Ohio Supreme Court has held that " '[m]andamus is the appropriate action to compel

---

**28.** See *State ex rel. Preschool Dev., Ltd. v. Springboro*, 99 Ohio St.3d 347, 2003-Ohio-3999, 792 N.E.2d 721, at ¶ 15.

**29.** Id. at ¶ 15.

**30.** Id. at ¶ 16.

public authorities to institute appropriation proceedings where an involuntary taking of private property is alleged.'" [31]  In this case, Hilltop and Queensgate have a clear legal right to compel the city to begin appropriation proceedings.

{¶ 44} We hold that the city has substantially and unreasonably interfered with Hilltop and Queensgate's right of access to the abutting public roadway, River Road, in violation of Section 19, Article I of the Ohio Constitution and the Fifth Amendment to the United States Constitution.  And the city's denial of Hilltop and Queensgate's curb-cut/driveway permit leaves Hilltop and Queensgate with no adequate remedy in the ordinary course of the law.  Thus the city has a corresponding legal duty to institute an appropriation action.

{¶ 45} The writ of mandamus is issued.

Writ issued.

DOAN, P.J., and SUNDERMANN, J., concur.

---

31.  See State ex rel. Duncan v. Mentor, 105 Ohio St.3d 372, 2005-Ohio-2163, 826 N.E.2d 832, at ¶ 11, quoting State ex rel. Shemo v. Mayfield Hts., 95 Ohio St.3d 59, 63, 2002-Ohio-1627, 765 N.E.2d 345.