THE STATE EX REL. HILLTOP BASIC RESOURCES, INC.; QUEENSGATE TERMINALS, L.L.C., APPELLEE, v. CITY OF CINCINNATI, APPELLANT.

[Cite as *State ex rel. Hilltop Basic Resources, Inc. v. Cincinnati*, 118 Ohio St.3d 131, 2008-Ohio-1966.]

(No. 2006–1544—Submitted April 23, 2008—Decided April 30, 2008.)

———————

**Per Curiam.**

{¶ 1} This is an appeal from a judgment granting a writ of mandamus to compel appellant, city of Cincinnati, to institute an appropriation action. Because

the city substantially and unreasonably interfered with a private property owner's right of access to an abutting public road, we affirm.

## Acquisition of Property

{¶ 2} In 1991, Hilltop Basic Resources, Inc. ("Hilltop") purchased approximately 30 acres of riverfront property located at 1911 and 2151 River Road in Cincinnati. Because the majority of the property is separated from River Road by two rail lines, Hilltop also purchased title to the ground underneath the rails opposite the intersection of River Road and State Avenue, including the right to construct a roadway over the rails and onto River Road at that intersection. This is the only portion of the property that abuts a public roadway.

{¶ 3} When Hilltop acquired the property, it also entered into a license agreement with Mont Clare Properties, Inc., which allowed Hilltop to access the property through land owned by other parties adjacent to Evans Street. The license could be terminated upon five days' written notice.

{¶ 4} The property is zoned RF–C and RF–M, which authorizes various uses, including barge and train loading and unloading and bulk material storage, handling, and distribution. Hilltop used the property primarily for barge mooring and fleeting, receiving broken concrete, and producing and selling recycled concrete.

## Access to River Road and Proposed Development

{¶ 5} In 1996, Cincinnati granted Hilltop's applications for permits, which included a proposed curb cut and driveway from the property to River Road at the intersection of River Road and State Avenue. The permits were issued in connection with Hilltop's planned terminal and storage facility. After renewing the permits for an additional year, Hilltop let them expire.

{¶ 6} In 2001, with Hilltop's support, Cincinnati requested federal funding to assist in developing the property as a multimodal transportation facility using the proposed access to River Road at State Avenue for truck traffic. The city noted that the proposed project would "permit the development of an Intermodal Facility on the land between River Road (U.S. 50), the Ohio River, State Avenue, and the Mill Creek for use by rail, highway and barge facilities." According to Cincinnati's request for funding, the project would "open the essentially land locked 20 acre site for development as a commercial intermodal facility." The city's funding request was unsuccessful.

## Lease with Purchase Option

{¶ 7} In 2004, Hilltop leased the property, with a purchase option, to appellee, Queensgate Terminals, L.L.C. ("Queensgate"). The lease agreement had an initial 12–month term beginning June 1, 2004, followed by a 12–month renewal

term. Under the agreement, Queensgate was required to pay Hilltop $195,000 for the initial term and, if Queensgate chose to renew the lease, $200,000 for the renewal term. Queensgate had an exclusive option to purchase the property for $5,000,000 within the term of the lease.

{¶ 8} Queensgate planned to develop the property as an intermodal barge-to-rail facility that would be part of a national transportation network. According to Queensgate, it invested "hundreds of thousands of dollars in the development of the River Road Property as an intermodal barge-to-rail facility in real estate development costs, salaries, and other attendant expenses."

## Bridge–Improvement Project

{¶ 9} The Edward N. Waldvogel Memorial Viaduct is a 2,690–foot bridge in Cincinnati that carries over 50,000 vehicles a day. Although the bridge is an important part of the local transportation system, it has the lowest bridge sufficiency rating in the county and does not meet current design standards. To rectify these problems, the city plans to remove the existing bridge and replace it with a new one that will require River Road to be elevated by about seven feet across from State Avenue and a retaining wall to be built along the side of River Road adjoining the property.

## Hilltop's Application for a Street–Opening Permit

{¶ 10} In May 2005, Queensgate requested information from the city regarding permits necessary to initiate its planned operations on the property. When Cincinnati responded, Queensgate and Hilltop first became aware of the city's plans to effectively eliminate the property's access to River Road as part of the bridge improvement and the city's intention never to permit them to have access to River Road.

{¶ 11} In August 2005, Hilltop attempted to save its lease agreement with Queensgate by reapplying for a permit for a curb cut and driveway to access the property from River Road at the intersection with State Avenue. A month later, the city engineer denied Hilltop's permit application "because the pending reconstruction of the Waldvogel (Sixth Street) Viaduct will not support this access."

## Mandamus Case

{¶ 12} Hilltop and Queensgate then filed a petition in the Court of Appeals for Hamilton County for a writ of mandamus to compel Cincinnati to institute eminent-domain proceedings because the city's actions constituted a taking of their property. The city filed an answer, and the parties filed motions for summary judgment.

{¶ 13} The court of appeals granted the writ.

{¶ 14} This cause is now before the court upon the city's appeal as of right.

Mootness of Appeal Regarding Granting of Writ Concerning Hilltop

{¶ 15} The parties agree that after the filing of this appeal but before briefing began, mediation resulted in a partial settlement of this appeal when the city purchased the property from Hilltop. See *State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Information Network, Inc. v. Dupuis*, 98 Ohio St.3d 126, 2002-Ohio-7041, 781 N.E.2d 163, ¶ 8 ("An event that causes a case to become moot may be proved by extrinsic evidence outside the record"). Therefore, insofar as the city's appeal was from the court of appeals' grant of the writ to Hilltop, the city no longer contests that ruling, and its appeal is moot to that extent. This appeal thus relates solely to the court of appeals' writ of mandamus granted in favor of Queensgate.

New Claim

{¶ 16} Cincinnati initially contends that the court of appeals erred in granting the writ of mandamus to compel appropriation of Queensgate's property interest because a lessee with an expired option to purchase does not have a compensable interest that can be appropriated in an eminent-domain case.

{¶ 17} Cincinnati waived this issue by failing to raise it in the proceedings below. As the city notes, "the record is silent as to Queensgate's renewal," and the lease agreement between Hilltop and Queensgate "expired by its terms on June 1, 2006, at the latest." In fact, the record does not show whether Queensgate renewed the agreement after the initial term expired on June 1, 2005. Therefore, Queensgate's option to purchase under the lease expired either on June 1, 2005, or June 1, 2006.

{¶ 18} The court of appeals did not grant the writ until June 30, 2006. Therefore, nothing precluded Cincinnati from raising this argument in the court of appeals before the court rendered its judgment. And even after the writ had been granted, the city could have filed a Civ.R. 60(B) motion for relief from judgment to attempt to raise this claim and create a sufficient record for the court's resolution of it. The city did neither.

{¶ 19} By not raising this claim below when it had the opportunity to do so, the city waived its argument of it on appeal. See, e.g., *State ex rel. Mora v. Wilkinson*, 105 Ohio St.3d 272, 2005-Ohio-1509, 824 N.E.2d 1000, ¶ 17; *State ex rel. Hawthorn v. Russell*, 107 Ohio St.3d 269, 2005-Ohio-6431, 838 N.E.2d 666, ¶ 8.

{¶ 20} Nor can we add matter to the record before us to decide this new claim. *Dzina v. Celebrezze*, 108 Ohio St.3d 385, 2006-Ohio-1195, 843 N.E.2d 1202, ¶ 16 ("We cannot, however, add matter to the record before us that was not part of

the court of appeals' proceedings and then decide the appeal on the basis of the new matter"). In addition, we will not accept the city's invitation to base our consideration of this belatedly raised issue on a record that did not address the issue.

{¶ 21} Therefore, the city has waived its claim that Queensgate is not entitled to the writ of mandamus compelling appropriation based on Queensgate's property interest being limited to an expired option to purchase.

Administrative Appeal as Adequate Remedy
at Law Precluding Writ of Mandamus

{¶ 22} The city next claims that the court of appeals erred in granting the writ of mandamus because Hilltop and Queensgate had an adequate remedy at law by way of appeal from the city's denial of Hilltop's application for a street-opening permit.

{¶ 23} Mandamus will not issue if there is a plain and adequate remedy in the ordinary course of law. *State ex rel. Ross v. State*, 102 Ohio St.3d 73, 2004-Ohio-1827, 806 N.E.2d 553, ¶ 5; R.C. 2731.05. An administrative appeal generally provides an adequate remedy in the ordinary course of law that precludes extraordinary relief in mandamus. See, e.g., *State ex rel. Turner v. Houk*, 112 Ohio St.3d 561, 2007-Ohio-814, 862 N.E.2d 104, ¶ 9.

{¶ 24} The city engineer denied Hilltop's permit application because its proposal "to modify the curb and construct a driveway" did not comport with various sections of the Cincinnati Municipal Code, and "it would be inappropriate to grant a modification" under Section 721–145 of the code. Cincinnati claims that Queensgate had an adequate remedy by way of appeal to the Sidewalk Board of Appeals under Section 721–155 of the Cincinnati Municipal Code, which provides:

{¶ 25} "A board, to be known as the Sidewalk Board of Appeals, shall hear and determine any protests filed by property owners or their agents as to sidewalks, curb, or gutter construction, reconstruction or repair, the surfacing of driveways and parking lots, or appeals from owners dissatisfied with any modification authorized by the city engineer under Section 721–145."

{¶ 26} The city's argument lacks merit. It was Hilltop, and not Queensgate, that applied for the permit. In addition, as the court of appeals concluded, the Cincinnati Municipal Code does not provide for an appeal from the denial of a permit for a curb cut and the construction of a driveway. The requested construction was not for the construction of a curb or the surfacing of a driveway, and the denial of the permit was not a "modification authorized by the city engineer." See *Bosher v. Euclid Income Tax Bd. of Review*, 99 Ohio St.3d 330, 2003-Ohio-3886, 792 N.E.2d 181, ¶ 14 (words and phrases in ordinances must be read in context and construed according to rules of grammar and common usage).

Finally, the Cincinnati Municipal Code does not provide for an administrative appeal from the city engineer's decision denying the permit because that decision was not made in a quasi-judicial proceeding. *State ex rel. Painesville v. Lake Cty. Bd. of Commrs.* (2001), 93 Ohio St.3d 566, 571, 757 N.E.2d 347 ("R.C. 2506.01 provides for appeals only from quasi-judicial proceedings, which require notice, hearing, and the opportunity for introduction of evidence").

{¶ 27} Therefore, Queensgate did not have an adequate remedy at law by way of an administrative appeal.

### Taking When Property Owner is Not Denied All Economically Viable Use

{¶ 28} Cincinnati argues that its denial of the curb cut and driveway access to the public roadway could not constitute a compensable taking because it did not deny Hilltop and Queensgate all economically viable use of the property.

{¶ 29} The city is incorrect. "In cases of * * * the destruction of a fundamental attribute of ownership like the right of access, the landowner need not establish the deprivation of *all* economically viable uses of the land." (Emphasis sic.) *State ex rel. BSW Dev. Group v. Dayton* (1998), 83 Ohio St.3d 338, 342, 699 N.E.2d 1271. It is only "in other cases, which generally involve a claimed regulatory taking, [that] the landowner must prove that the taking deprived *all* economically viable uses of the land." (Emphasis sic.) *State ex rel. Elsass v. Shelby Cty. Bd. of Commrs.* (2001), 92 Ohio St.3d 529, 534, 751 N.E.2d 1032. Because this case involves the denial of Hilltop's and Queensgate's right of access rather than a general regulatory taking, the court of appeals acted properly in issuing the writ without a showing that the city had denied them all economically viable uses of the land.

### Denial of Right of Access When Property Has Not Been Developed

{¶ 30} Cincinnati asserts that there is no compensable taking when the denial of access affects undeveloped property. The city cites Justice Cook's dissenting opinion in *State ex rel. OTR v. Columbus* (1996), 76 Ohio St.3d 203, 211–216, 667 N.E.2d 8, in support of its proposition.

{¶ 31} But in *OTR*, we adopted no distinction between developed and undeveloped property in determining whether there is a compensable taking. Instead, we held:

{¶ 32} "An owner of a parcel of real property has a right to access public streets or highways on which the land abuts. Therefore, any governmental action that substantially or unreasonably interferes with this right constitutes a taking of private property within the meaning of Section 19, Article I of the Ohio Constitution and the Fifth Amendment to the United States Constitution." Id. at syllabus.

{¶ 33} In so holding, we expressly rejected an "arbitrary distinction between developed and undeveloped rights of access." Id. at 209, 667 N.E.2d 8.

{¶ 34} Similarly, we hold that consistent with *OTR*, there is also no requirement that the affected property have been developed in reliance on the existing grade in order to effectuate a taking. Instead, the applicable test is whether the governmental action substantially or unreasonably interfered with the landowner's right of access to the public street or highway on which the land abuts. *OTR*, 76 Ohio St.3d 203, 667 N.E.2d 8, syllabus; see also 4A Sackman, Nichols on Eminent Domain (3d Ed.2006) 14A–78, Section 14A.03[6][b] ("Both state and federal courts recognize that a right of access is a property right which cannot be taken or materially interfered with without just compensation"). The right to be compensated for such taking can be established by a reasonably potential future use. Cf. id. at 14A–82 ("The property owner must, however, establish a foundation that prior to the taking there was a reasonable potential in the foreseeable future for developing the property in accordance with its highest and best use and that this potential for development had been diminished by the loss of the access rights in whole or in part").

{¶ 35} Moreover, insofar as the city further contends that the court of appeals erred in finding a taking when Hilltop had a license to access the property through other private landowners' property, the court of appeals correctly determined that a revocable, nongovernmental license is distinguishable from the permanent government easement held by this court to preclude compensation in *State ex rel. Preschool Dev., Ltd. v. Springboro*, 99 Ohio St.3d 347, 2003-Ohio-3999, 792 N.E.2d 721.

## Remedy for Taking

{¶ 36} The city finally claims that appropriation of the entire property is not the proper remedy for its denial of the right of access to the abutting public road.

{¶ 37} "Mandamus is the appropriate action to compel public authorities to institute appropriation proceedings where an involuntary taking of private property is alleged." *State ex rel. Shemo v. Mayfield Hts.* (2002), 95 Ohio St.3d 59, 63, 765 N.E.2d 345, judgment modified on other grounds, 96 Ohio St.3d 379, 2002-Ohio-4905, 775 N.E.2d 493. When the taking involves the denial of the right of access, it involves a taking of the property " 'to that extent.' " *OTR*, 76 Ohio St.3d at 207, 667 N.E.2d 8, quoting *Mansfield v. Balliett* (1902), 65 Ohio St. 451, 471, 63 N.E. 86.

{¶ 38} The city claims that instead of ordering an appropriation proceeding for only that portion of the property taken by the city's denial of access, the court of appeals erroneously ordered an appropriation of all of the property. The city,

however, misconstrues the court of appeals' order. The court of appeals issued the writ based on the following:

{¶ 39} "We hold that the city has substantially and unreasonably interfered with Hilltop and Queensgate's right of access to the abutting public roadway, River Road, in violation of Section 19, Article I of the Ohio Constitution and the Fifth Amendment to the United States Constitution. And the city's denial of Hilltop and Queensgate's curb-cut/driveway permit leaves Hilltop and Queensgate with no adequate remedy in the ordinary course of the law. Thus the city has a corresponding legal duty to institute an appropriation action." 167 Ohio App.3d 798, 2006-Ohio-3348, 857 N.E.2d 612, ¶ 44.

{¶ 40} The court of appeals did not order an appropriation of the entire property.

### Conclusion

{¶ 41} Therefore, the court of appeals properly concluded that the city's denial of the permit for a curb cut and driveway construction substantially and unreasonably interfered with Queensgate's right of access to the abutting public road. We affirm the judgment of the court of appeals granting the writ of mandamus to compel Cincinnati to institute an appropriation proceeding to determine the compensation due to Queensgate for the taking.

Judgment affirmed.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

———————

Katz, Teller, Brant & Hild and James F. McCarthy III, for appellee.

Julia L. McNeil, Cincinnati City Solicitor, and Terrance A. Nestor and Mary Frances Clark, Assistant City Solicitors, for appellant.