DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Wood County Court of Common Pleas which granted the summary judgment motions of the numerous defendants-appellees in this case and thereby dismissed the action filed by plaintiffs-appellants, *Page 2 
Roger and Dorothy Riehl, for money damages and a permanent injunction. For the following reasons, we find that the judgment of the trial court should be affirmed.
 {¶ 2} This case is the latest installment in the ongoing dispute between property owners in the Rossford, Ohio subdivision known as Eagle Point Colony whose properties abut an undedicated access road/alley commonly known as Thirwal Drive. Appellants, Roger and Dorothy Riehl ("the Riehls"), are property owners of portions of Lots 29 and 30 in Eagle Point Colony. Defendants, Eugene S. and Molly A. Jakubec, Henry G. Werner, Randall W. and Gaylynn G. Hunt, Janice L. Merrell, Douglas D. and Marlyn Sue Kalmbach, William M. and Theresa A. Romp, James E. Mann, Robert S. and Bretta Ann Ruse, Karen E. Schlatter, Donald Leary, Rebecca S. Fuhrman, Margaret Werner, Rahn and Pat Huffstutler, and Lisa Bell ("the defendant property owners")[1], also own lots in Eagle Point Colony. Thirwal Drive runs along the back of the lots owned by the Riehls and the defendant property owners and dead ends into the backs of Lots 24, 25 and 26. Thirwal Drive is often used by utility trucks and trash removal vehicles to access the properties owned by the Riehls and the defendant property owners. It is also the only means of ingress and egress to the driveways of the properties owned by the defendant property owners and by the Riehls.
 {¶ 3} In 1977, a number of residents of Eagle Point Colony who used Thirwal Drive to access their homes and whose properties abut Thirwal Drive filed a lawsuit *Page 3 
against the Riehls seeking to enjoin them from clogging, choking or narrowing the width of Thirwal Drive. In a judgment dated August 3, 1977, Judge Gale Williamson determined that an easement by prescription existed over the land of the Riehls in the form of Thirwal Drive and permanently enjoined them from clogging, narrowing, or impeding the use of Thirwal Drive by the residents of the area, by service vehicles and by all others with a need to reach the rear portion of those lots abutting or contiguous to Thirwal Drive. Subsequently, the plaintiffs in the 1977 action filed a motion in contempt alleging that the Riehls had violated the prior order of the court by permitting trees, shrubs and bushes to partially obstruct the traveled portion of Thirwal Drive. Upon consideration of the motion, Judge Williamson determined that the Riehls "do not have the obligation of removing or trimming the bushes and trees or otherwise to repair or maintain the easement."
 {¶ 4} In 1995, the Rossford City Council passed Ordinance No. 94-045, the purpose of which was to revise and update Chapter 1331 of the Rossford Municipal Code. Pursuant to that ordinance, section 1331.01 of the Rossford Municipal Code now reads in relevant part: "Every occupant of land shall maintain his property so that no brush, trees, bushes or obstructions extend into, on or over any public or private way generally used for the passage of persons or vehicles so as to obstruct or interfere with the passage of such persons or vehicles, or with the ingress and egress of emergency, maintenance, repair or service vehicles or equipment." *Page 4 
 {¶ 5} In 1996, the city of Rossford filed a complaint in Perrysburg Municipal Court against the Riehls for violating the nuisance ordinance by allowing brush, trees, bushes or obstructions to extend onto, on or over Thirwal Drive so as to obstruct or interfere with the passage of persons or vehicles. The city of Rossford subsequently moved to dismiss the nuisance action against the Riehls on the condition that the "City of Rossford to do trimming in accordance with J/E of Judge Williamson * * * and [Riehls] to allow city access to accomplish this this will not be interpreted as an abrogation of the [Riehls'] property rights nor may it be used as precedent for ownership or claims by the city." The court granted the motion in an order dated February 10, 1997.
 {¶ 6} In subsequent years, the Riehls continued to refuse to maintain their trees and bushes so as to prevent them from encroaching upon Thirwal Drive. In, at the very least, 2000, 2001, 2003 and 2004, Rossford sent a nuisance abatement notice to the Riehls notifying them that brush, trees, bushes and other obstructions from their property were extending onto Thirwal Drive and interfering with the passage of persons or vehicles. The notices required the Riehls to abate the nuisance within five days or the city would take action to abate the nuisance itself, along with all other available remedies. The Riehls did not abate the nuisances. Section 1331.08 of the Rossford Municipal Code provides that if a property owner fails to abate a nuisance within the time set forth in the notice, the Municipal Administrator may execute the order and the costs and expenses incident to the execution of the order shall be paid by the property owner. In 2003 and *Page 5 
2004, the Riehls paid $428 and $500 respectively for the assessments levied against them after the city hired Blanchard Tree Service to trim the obstructing trees and bushes.
 {¶ 7} On May 17, 2005, the Riehls filed a complaint for money damages and a permanent injunction in the court below. In addition to the defendant property owners, the Riehls named as defendants the city of Rossford and Kevin Heban, the prosecutor for the city of Rossford ("the governmental defendants). Count 1 of the complaint alleged that the governmental defendants had breached a contract, set forth in the February 10, 1997 order of the Perrysburg Municipal Court, by passing ordinances that assessed the costs of trimming the Riehls' trees and bushes to the Riehls. Count 2 asserted that the actions of Rossford and Heban regarding the assessments imposed on the Riehls amounted to fraud. Count 3 alleged that the actions of the city in assessing the costs of the tree trimming amounted to an unconstitutional taking of property without just compensation and without due process. Count 3 also appears to allege a violation of equal protection by asserting that other occupiers of real estate in Eagle Point Colony have allowed brush to encroach onto public roads in clear violation of the nuisance ordinances but the city has never assessed those occupiers for the costs of abating the nuisance. In Count 4 of the complaint, the Riehls assert that the city's conduct in enforcing the nuisance abatement statute was in retaliation for the Riehls' exercise of their First Amendment rights to publicly criticize the city. Count 5 of the complaint asserted a claim for intentional infliction of emotional distress. Finally, in Count 6 of their complaint, the Riehls requested that the "Defendant" (without identifying to which *Page 6 
defendant the count is addressed) be enjoined from continuing the complained of conduct. Most of the defendant property owners filed a joint answer. Pat and Rahn Huffstutler each filed their own answers and Rahn Huffstutler filed a cross-claim against the city of Rossford and a third-party complaint against the Eagle Point Colony Association ("the Association"). In his cross-claim against Rossford, Huffstutler asserted that because Rossford has in the past exercised dominion and control over Thirwal Drive, Rossford should be found liable for the costs of maintaining all of the trees and shrubs that encroach upon the easement. In his third-party complaint against the Association, Huffstutler asserted claims for breach of contract and indemnification.
 {¶ 8} In the proceedings below, the governmental defendants filed a summary judgment motion on all claims filed against them by the Riehls and the cross-claims filed by Huffstutler. The defendant property owners and third-party defendant the Association also filed summary judgment motions as to all of the claims against them. Finally, the Riehls filed a motion for summary judgment on all counts against the governmental defendants and on Counts 4, 5 and 6 against the defendant property owners.
 {¶ 9} On June 8, 2006, the lower court issued an opinion and judgment entry which granted the summary judgment motions of the defendant property owners, the governmental defendants and the Association and thereby dismissed the complaint, cross-claim and third party claim and dismissed the action in its entirety. The Riehls now challenge that judgment on appeal through the following assignments of error: *Page 7 
 {¶ 10} "1. The trial court erred in granting summary judgment to defendants Jakubec, Werner, Hunt, Merrell, Kalmbach, Romp, Mann, Ruse, Schlatter, Leary and Fuhrman.
 {¶ 11} "2. The trial court erred in granting summary judgment to defendants Heban and Rossford.
 {¶ 12} "3. The trial court erred in sua sponte dismissing plaintiffs' claims against non-moving defendants."
 {¶ 13} The three assignments of error raised by the Riehls all challenge various aspects of the trial court's order granting the various defendants summary judgment. In reviewing a ruling on a summary judgment motion, this court applies the same standard as the trial court. Lorain Natl. Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127,129. Summary judgment will be granted when there remains no genuine issue as to any material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).
 {¶ 14} The Riehls' first and third assignments of error are related and will be discussed together. Through those assignments of error the Riehls challenge the trial court's order granting summary judgment to the defendant property owners. In the proceedings below, defendant property owners and appellees herein, Jakubec, Werner, Hunt, Merrell, Kalmbach, Romp, Mann, Ruse, Schlatter, Leary, Fuhrman and Werner, filed a joint motion for summary judgment as to all of the claims set forth in the Riehls' *Page 8 
complaint. Defendant property owners Rahn and Pat Huffstutler did not file summary judgment motions with regard to the Riehls' complaint and defendant property owner Lisa Bell failed to file an answer or plead in any manner. Nevertheless, the lower court granted summary judgment to all of these defendants on all of the Riehls' claims against them.
 {¶ 15} This court has reviewed the inartfully drafted complaint numerous times as well as all of the summary judgment motions and replies filed in the proceedings below and still struggles for a clear explanation of the claims that the Riehls filed against the defendant property owners. As against the defendant property owners, the Riehls' complaint seems to assert that the city of Rossford's enforcement of its nuisance ordinance is part of scheme to take the Riehls' property from them for the benefit of the defendant property owners; that based on Judge Williamson's 1978 decision, the defendant property owners are responsible for maintaining the easement; and that because the Riehls paid the assessments, they are entitled to subrogation from the defendant property owners. The Riehls have also asserted a claim for intentional infliction of emotional distress apparently against all of the defendants.
 {¶ 16} Judge Williamson's 1978 decision declared that the Riehls did not have an obligation to remove or trim the bushes and trees or otherwise repair or maintain the easement. The current litigation, however, involves the Riehls' violation of Rossford's nuisance ordinance, which was passed after the 1978 decision. As stated above, that ordinance provides in relevant part: "Every occupant of land shall maintain his property *Page 9 
so that no brush, trees, bushes or obstructions extend into, on or over any public or private way generally used for the passage of persons or vehicles so as to obstruct or interfere with the passage of such persons or vehicles, or with the ingress and egress of emergency, maintenance, repair or service vehicles or equipment." The Riehls, however, seem to contend that Judge Williamson's decision has res judicata effect on all future actions regarding their obligations with regard to the easement and that they are exempt from the Rossford nuisance ordinance.
 {¶ 17} The doctrine of res judicata decrees that "a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous occurrence." Grava v. Parkman Twp.
(1995), 73 Ohio St.3d 379, 382. The initial proceeding at issue involved a judicial determination that a prescriptive easement existed in the form of Thirwal Drive for the benefit of the property owners whose lots abutted Thirwal Drive and who use that private drive to access their properties. In that action, the court also declared that the Riehls had no duty to maintain the easement. In the action filed by the Riehls in the court below, and that is now before this court on appeal, the Riehls attempt to collect damages under various theories for the Rossford nuisance ordinance being enforced against them and seek an injunction to prevent the ordinance from being enforced against them in the future as regards Thirwal Drive. That is, they contend that Judge Williamson's 1978 decision trumps the subsequently enacted nuisance ordinance. *Page 10 
 {¶ 18} It is well settled that "[a] legislative body may enact legislation declaring that previously lawful activity will thereafter be deemed a nuisance." Downing v. Cook (1982), 69 Ohio St.2d 149, 150. Although the Riehls have not challenged the nuisance ordinance as unconstitutional, "[s]uch legislation will be upheld against constitutional challenge if it comes within the police power, i.e., if it has a real and substantial relation to the public health, safety, morals or general welfare of the public and is neither unreasonable nor arbitrary." Id. The Rossford nuisance ordinance has a real and substantial relation to the safety and general welfare of the public and is neither unreasonable nor arbitrary in that it seeks to prevent Rossford property owners from obstructing any public or private way that is used for the passage of persons or vehicles, including emergency, maintenance, repair or service vehicles or equipment. Accordingly, the nuisance ordinance applies to the Riehls as is applies to all residents of Rossford and Judge Williamson's order of 1978 has no res judicata effect on the application of the ordinance to the Riehls. As such, the Riehls are not entitled to subrogation for their payment of the nuisance abatement assessments.
 {¶ 19} As to their claim for intentional infliction of emotional distress, it is well settled that "[i]n a case for intentional infliction of emotional distress, a plaintiff must prove (1) that the defendant intended to cause the plaintiff serious emotional distress, (2) that the defendant's conduct was extreme and outrageous, and (3) that the defendant's conduct was the proximate cause of plaintiff s serious emotional distress." Phung v. Waste Mgt., Inc. (1994),71 Ohio St.3d 408, 410. In the proceeding below in response to *Page 11 
the defendant property owners' motion for summary judgment, the Riehls submitted no evidence from which reasonable minds could conclude that the defendant property owners' conduct was in any way extreme or outrageous. They further submitted no evidence that they suffered from any form of serious emotional distress as a result of conduct of the defendant property owners. Although Mr. Riehl testified to a few sleepless nights and visits to a psychologist, "'[liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim "Outrageous!"'" Yeager v.Local Union 20 (1983), 6 Ohio St.3d 369, 375, quoting Restatement of the Law 2d, Torts (1965) 73, Section 46(d), reversed on other grounds inWelling v. Weinfeld, 113 Ohio St.3d 464. "The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" Id.
 {¶ 20} As no genuine issue of material fact remained with regard to the Riehls' claims against the defendant property owners and the defendant property owners were entitled to judgment as a matter of law with regard to the claims against them, the lower court did not err in finding that the defendant property owners were entitled to judgment as a matter of law and the first assignment of error is not well-taken. *Page 12 
 {¶ 21} In their third assignment of error, the Riehls assert that the lower court erred in sua sponte granting summary judgment to Rahn and Pat Huffstutler and Lisa Bell and thereby dismissing the Riehls' complaint against them without first notifying the parties that it was considering such a dismissal and affording the parties an opportunity to respond.
 {¶ 22} The claims set forth in the Riehls' complaint against Bell and the Huffstutlers are identical to the claims set forth against the remaining defendant property owners. The complaint does not distinguish between the property owner defendants but, rather, treats them as one entity. Moreover, all of the material facts with regard to those claims and parties are the same. Ordinarily, Civ.R. 56 does not authorize courts to enter summary judgment in favor of a non-moving party.Marshall v. Aaron (1984), 15 Ohio St.3d 48, syllabus. The Supreme Court of Ohio has held, however, that "an entry of summary judgment against the moving party does not prejudice his due process rights where all relevant evidence is before the court, no genuine issue as to any material fact exists, and the non-moving party is entitled to judgment as a matter of law." State ex rel. Cuyahoga Cty. Hosp. v. Bur. ofWorkers' Comp. (1986), 27 Ohio St.3d 25, 28, citing Houk v. Ross (1973),34 Ohio St.2d 77, paragraph one of the syllabus. In light of this standard, and given that summary judgment in favor of the defendant property owners was appropriate, the lower court further did not err in granting summary judgment in favor of Bell and the Huffstutlers. The third assignment of error is not well-taken. *Page 13 
 {¶ 23} In their second assignment of error, the Riehls challenge the lower court's entry of summary judgment in favor of the governmental defendants. All of the Riehls' claims in their complaint were directed toward the governmental defendants so we will address them all here.
 {¶ 24} As set forth in R.C. 2744.02(A)(1), a political subdivisions "is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." Although there are exceptions to this general grant of immunity from tort claims, none of those exceptions apply in this case. See R.C. 2744.02(B). At its heart, the Riehls' complaint alleges that Judge Osterud's judgment of February 27, 1997, granting the city's motion to dismiss the first nuisance action filed against the Riehls, amounted to a res judicata determination that the Riehls never again have an obligation to trim their bushes and trees and prevent them from obstructing Thirwal Drive. Continuing, the complaint asserts that all actions taken by the city to enforce its nuisance ordinance against the Riehls following that determination, and specifically the passage of Ordinance 2003-31 and Ordinance 2004-28, amounted to a breach of contract, fraud, an unconstitutional taking without just compensation and without due process, was done disparately and in violation of the Riehls' rights to equal protection, was retaliatory, and was done intentionally so as to cause the Riehls severe emotional distress. *Page 14 
 {¶ 25} Expressly included in the definition of governmental functions are legislative and quasi-legislative functions, R.C. 2744.01(C)(2)(f), and the enforcement or nonperformance of any law, R.C. 2744.0 1(C)(2)(i). Accordingly, a political subdivision or an employee of a political subdivision is immune from liability in a civil action for injury or loss to property when the claims are in connection with the political subdivision's or employee's performance of legislative or quasi-legislative functions or their enforcement or nonperformance of any law. Moreover, the Supreme Court of Ohio has expressly stated that "[t]here are no exceptions to immunity for the intentional torts of fraud and intentional infliction of emotional distress * * *."Wilson v. Stark Cty. Dept. of Human Serv. (1994), 70 Ohio St.3d 450,452. Because the Riehls' claims against the governmental defendants all arise out of those defendants' performance of their governmental functions, and because no exceptions to immunity apply with regard to the Riehls' claims against the governmental defendants for fraud and intentional infliction of emotional distress, the governmental defendants were entitled to summary judgment as to those claims on the basis of governmental immunity.
 {¶ 26} The Political Subdivision Tort Liability Act, R.C. Chapter 2744, however, does not apply to civil actions that seek to recover damages from a political subdivision or any of its employees for contractual liability, R.C. 2744.09(A), or for civil claims based on alleged violations of the constitution or statutes of the United States. R.C. 2744.09(E). As such, we must specifically address the Riehls' first, third and fourth claims of their complaint. *Page 15 
 {¶ 27} In their first claim for relief, the Riehls asserted that in February 1997, the city of Rossford through its attorney, Kevin Heban, entered in to a settlement agreement with the Riehls which was approved and accepted by Judge Dwight Osterud and filed with the court on February 27, 1997. The Riehls claim that through that settlement agreement, the city of Rossford agreed to trim the Riehls' bushes and trees that encroached on Thirwal Drive in accordance with the 1978 journal entry of Judge Williamson. Nevertheless, in 2003 and 2004, the city of Rossford passed ordinances assessing the costs of trimming against the Riehls' real estate. The Riehls claim that the February 1997 judgment entry amounted to a contract and that through their actions, the governmental defendants breached this contract with the Riehls.
 {¶ 28} In addressing this issue, the lower court concluded that while "[i]t is true that a plea agreement is contractual in nature, is binding, and is subject to contract law standards * * * the proceedings in the 1996 case cannot be characterized as a plea agreement." The court continued:
 {¶ 29} "A plea agreement typically rests on the defendant making a guilty plea in consideration of a favorable outcome. That is consistent with basic contract requirements of mutual assent and consideration. Consideration may consist either in a detriment to the promisee or a benefit to the promisor. Ford v. Tandy Transp., Inc. (1993),86 Ohio App.3d 364, 384. A gratuitous promise is not enforceable under a contract theory even if it is written and evidences intent by the promisor to be bound. Carlisle v. T R Excavating, Inc. (1997),123 Ohio App.3d 277, 283. *Page 16 
 {¶ 30} "In the 1996 proceedings, there is no evidence of any benefit accruing to the City or any detriment suffered by plaintiffs due to their agreement that could constitute consideration for a contract. Following the gist of Plaintiffs' argument, it would be the case that the Prosecutor promised for the City to do the trimming, to pay for the trimming and to dismiss the charge against him. There was no exchange of consideration between the City and the Plaintiffs. Without consideration, there can be no contract. Therefore, the court concludes that the 1996 proceeding cannot be characterized as a contract."
 {¶ 31} We agree with the trial court's assessment of this issue. We further note that nothing in the February 1997 order can be construed as an agreement by the city to trim the Riehls' trees and bushes along Thirwal Drive ad infinitum. The order dismissed the nuisance case that was filed against the Riehls in 1996, and ordered Rossford to trim the Riehls' bushes and trees at that time. That is all that it did. Accordingly, the governmental defendants were entitled to summary judgment on the breach of contract claim.
 {¶ 32} In their third claim for relief, the Riehls contend that they have been the victims of an intentional scheme to take their property under color of law without just compensation and without due process for the benefit of the defendant property owners.
 {¶ 33} "The United States and Ohio Constitutions guarantee that private property shall not be taken for public use without just compensation. Fifth and Fourteenth Amendments to the United States Constitution; Section 19, Article I, Ohio Constitution." *Page 17 State ex rel. Elsass v. Shelby Cty. Bd. Of Commrs. (2001),92 Ohio St.3d 529, 533. "In order to establish a taking, a landowner must demonstrate a substantial or unreasonable interference with a property right. * * * Such an interference may involve the actual physical taking of real property, or it may include the deprivation of an intangible interest in the premises." State ex rel OTR v. Columbus (1996), 76 Ohio St.3d 203,206. (Citations omitted.) In Lingle v. Chevron U.S.A. Inc. (2005),544 U.S. 528, the United States Supreme Court modified the test for determining whether a taking had occurred. In Trafalgar Corp. v. MiamiCty. Bd. of Cty. Commrs. (S.D.Ohio 2006), No. 3:05-CV-084,2006 WL 689112, the Southern District Court of Ohio explained the modification as follows: "The [Supreme] Court clarified that Takings Clause claims could be shown only (1) where there is a permanent physical invasion of property (Loretto v. Teleprompter Manhattan CATV Corp. (1982),458 U.S. 419 * * * (state law requiring landlords to permit cable companies to install cable facilities in apartment buildings effected a taking); (2) regulations completely deprive an owner of all economically beneficial uses of the property (Lucas v. South Carolina Coastal Council (1992),505 U.S. 1003, 1014 * * * ); or (3) takings governed by Penn CentralTransp. Co. v. New York City (1978), 438 U.S. 104 * * *." Cases reviewed under Penn Central look to various factors to determine if a taking has occurred. "Primary among those factors are `[t]he economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations' * * * [and] the `character of the governmental action' — for instance whether it amounts to a physical *Page 18 
invasion or instead merely affects property interests through `some public program adjusting the benefits and burdens of economic life to promote the common good' — may be relevant in discerning whether a taking has occurred." Lingle, supra quoting Penn Central,438 U.S. at 124.
 {¶ 34} In the proceedings below, and in response to the governmental defendants' motion for summary judgment, the Riehls presented no specific arguments or evidence to support their claim that the enforcement of the nuisance ordinance against them amounted to an unconstitutional taking. Moreover, in Lingle, the Supreme Court reiterated that the government must pay just compensation for total regulatory takings "except to the extent that `background principles of nuisance and property law' independently restrict the owner's intended use of the property." Lingle, 544 U.S. at 538, quoting Lucas,505 U.S. at 1026-1032. Accordingly, the governmental defendants were entitled to summary judgment on the Riehls' taking claim.
 {¶ 35} The Riehls further alleged in their third claim for relief that the nuisance ordinance was enforced disparately and in violation of their rights to equal protection. In support of their summary judgment motion, the governmental defendants presented evidence that the ordinance had been enforced against other Rossford residents. The Riehls did not counter this evidence with any evidence of disparate treatment and the trial court properly granted the governmental defendants summary judgment on this claim.
 {¶ 36} Finally, in their fourth claim for relief, the Riehls asserted that the conduct of the governmental defendants in assessing them for the costs of trimming the trees and *Page 19 
bushes was in retaliation for Roger Riehl's exercise of hisFirst Amendment right to freedom of speech in publicly criticizing the city of Rossford and his constitutional right to access the courts for a remedy. Upon review of this issue, the lower court stated:
 {¶ 37} "To establish a First Amendment retaliation claim, plaintiffs must show: (1) the plaintiffs engaged in protected conduct; (2) an adverse action was taken against the plaintiffs that would deter a person of ordinary firmness from continuing to engage in the conduct; and (3) the adverse action was motivated at least in part by the plaintiffs' protected conduct. Thaddeus-X v. Blatter (6th Cir. 1999), 175 F.3d. 378, 394. The court acknowledges the two activities cited by plaintiffs are entitled to constitutional protection. However, standing alone, they are not sufficient to establish a retaliation claim.
 {¶ 38} "Plaintiffs assert two incidents as the basis of their retaliation claim. The first incident was Mr. Riehl's criticism of the City for its chaotic house numbering scheme in Eagle Point Colony. That incident occurred 26 years ago. The court fails to see the connection between that remote incident and the passage of the ordinance. That incident could not have motivated the City's enactment of the nuisance abatement ordinance in 1995.
 {¶ 39} "Plaintiffs' retaliation claim on the basis of their filing a lawsuit also fails. The alleged adverse action taken by the City against plaintiffs was the enactment and the enforcement of the nuisance abatement ordinance. Reasonable minds can only conclude that abating a nuisance is not an adverse action against the plaintiffs. It was a valid *Page 20 
exercise of the City's police power to protect the safety and general welfare of the public."
 {¶ 40} We agree with the trial court's assessment of this issue. We further note that the Riehls have not expressly argued in their brief before this court that the trial court's assessment of this issue was erroneous. The lower court properly granted the governmental defendants summary judgment on the Riehls' retaliation claim.
 {¶ 41} Accordingly, because the lower court did not err in granting the governmental defendants summary judgment on all of the Riehls' claims against them, the second assignment of error is not well-taken.
 {¶ 42} On consideration whereof, the court finds that substantial justice has been done the parties complaining and the judgment of the Wood County Court of Common Pleas is affirmed. Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Wood County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Mark L. Pietrykowski, P.J., Arlene Singer, J., Thomas J. Osowik, J. CONCUR.
[1] Bell and the Huffstutlers did not join the other defendant property owners as appellees before this court. *Page 1